DICK H. PHELPS, Appellant, *v.* JOSEPH McGEE, Appellee.

APPEAL FROM CASS.

The word *accrued*, as used in reference to contracts in which process may be sent out of the county to be served, has reference to the place where the contract was made and executed.

Where an article is to be delivered at a place certain, on or before a day named, without a prior demand, the breach can only occur on the day named ; and the measure of damages, in case of a breach, will be the difference between the value of the article, on the day and at the place named, and the contract price.

A refusal to deliver upon a demand upon a day subsequent to that named in the contract, would not create a breach, but might be considered a waiver of the previous breach, and an acceptance might be held a satisfaction of the contract.

THIS is an action of assumpsit upon the following agreement:

"I have this day sold to J. W. McGee, of Beardstown, Illinois, five thousand bushels of good, round, merchantable, white or yellow corn, to be shelled, fanned, cleaned and delivered in good order, on board of canal boat or boats, at Point Isabel, Illinois river, on or before the 15th day of August next, at the option of said J. W. McGee, at thirty-four cents per bushel; said boat or boats to be furnished by said McGee.  Received five hundred dollars, on account of this contract, in advance, balance payable on delivery of said corn.

*Beardstown, June 23d,* 1854.

" It is further agreed, that in case the above corn is not taken away by the time above specified, the said McGee to pay storage at one-half of one cent per bushel, per month.

D. H. PHELPS,
By J. F. GAGE."

The writ was issued to Fulton county, and served there upon Dick H. Phelps, at the return term of the writ.  The defendant plead, in abatement of the writ, after craving oyer, and setting out the writ, " that plaintiff's supposed cause of action did not accrue to him in Cass county ; that the same was not specifically payable to plaintiff in said county of Cass ; that the defendant did not, at the commencement of the suit, or at the time of service of process, reside in Cass county ; that said defendant was not found or served with process in Cass county ;" prays judgment, etc.  Sworn to.

To which plaintiff replied :

" That, at the time of commencement of suit, he resided in Cass county ; that defendant resided in Fulton county, and that the contract sued on was made and executed in the county of Cass, and the cause of action accrued in the county of Cass."

Phelps *v.* McGee.

To which replication defendant demurred generally and specially, and for cause of special demurrer shows,

That plaintiff does not aver that the cause of action accrued to him in the county of Cass.

That replication is argumentative in stating that the contract was made in the county of Cass, and thereby the cause of action accrued to plaintiff in said county.

That replication is double, in showing that the cause of action accrued in the county of Cass, and that the contract was made in the county of Cass.

The court overruled defendant's demurrer to replication. Defendant abided by the demurrer, and took leave to plead to the declaration.

The first count in the declaration, after showing the execution of the contract, as above, alleges the plaintiff paid defendant in full for the five thousand bushels of corn ; that defendant delivered to plaintiff three thousand three hundred and forty-one bushels; that on 1st of June, 1855, he demanded of the defendant the delivery, at Point Isabel, of the residue, and offered to furnish boats then and there to receive the same, and tendered and offered to pay the storage on all the corn, from 15th of August, 1854, at one-half cent per bushel per month. Breach—defendant refused and neglected to deliver corn.

Second count alleges a purchase of five thousand bushels of corn, by written agreement, and then the same allegations as in first count.

Third count, for money had and received, one thousand dollars, *ad damnum* two thousand dollars.

Upon the trial of the cause, plaintiff proved the execution of the contract, as charged in the declaration, and the payment, by plaintiff, to defendant, for five thousand bushels of corn.

The plaintiff then read in evidence, E. R. Saunders' depositions, by which Saunders swears that defendant made the contract sued on, and one other contract for ten thousand bushels. The plaintiff then read in evidence, answer to interrogatory second of John Q. Merriam's deposition, who states that, on the last day of May, 1855, he went to Point Isabel, as the authorized agent of plaintiff, having a power of attorney for that purpose. Finding that Phelps was not there, he applied at the warehouse, defendant's former place of business, to know if there was any corn there for McGee. The reply from the keeper of the warehouse was, there was none. He then went to Ipava, where Phelps then lived, and found him. On the first day of June, 1855, I showed him my authority, and told

him I came to receive the balance of the corn, and pay storage on the same, which McGee had bought of him. Phelps said he had delivered the corn to the amount of the contract. I asked him for his receipts. He said he did not have them at hand, but would bring them down to McGee, and settle the matter with him. I then asked him to go with me to Beardstown, and make the settlement immediately. He said he could not go then on account of business. I then tendered, in gold, the amount due for storage, amounting to $133.34, and demanded the balance of corn, as claimed by McGee, and whatever was due for storage. He refused to deliver any corn, denying any was due on the contract.

To the reading of which answer the defendant then objected, on account of being variant from the allegations of the record, which objection the court overruled, and allowed the answer to be read; to which ruling the defendant then excepted.

The plaintiff then proved that, on the first day of June, 1855, corn was worth, at Point Isabel, seventy-five cents per bushel.

The plaintiff here rested his case, without proving that he ever furnished boats at Point Isabel, to take the corn claimed by him.

The defendant then proved that, after the making of the contract declared on, and before the commencement of this suit, he delivered at Point Isabel, to plaintiff, between six and seven thousand bushels of corn. The defendant also proved that Ipava was some sixteen miles from Point Isabel. The plaintiff then offered, as rebutting evidence, a contract between the parties for the purchase and sale of ten thousand bushels of corn, at 35 cents per bushel, with receipts indorsed thereon of the payment of eleven hundred and sixty-seven dollars.

The jury found a verdict against defendant for eleven hundred and thirty-one dollars, damages.

The defendant moved for arrest of judgment, and for a new trial.

The court overruled the motions, and rendered judgment upon the verdict.

Defendant appealed.

A. LINCOLN and J. S. BAILEY, for Appellant.

S. T. LOGAN, for Appellee.

CATON, J. The replication to the plea in abatement shows, that the contract, on which the action was brought, was made in the county of Cass, which was the residence of the plaintiff, and the first question is, whether this authorized the plaintiff to bring his action in that county, and send the summons to

another county. The statute is this : " It shall not be lawful for any plaintiff to sue a defendant out of the county where the latter resides, or may be found, except in cases where the debt, contract, or cause of action accrued in the county of the plaintiff, or where the contract may have been specifically made payable." If this contract *accrued* in Cass county, which was the residence of the plaintiff, then the action was well brought there. We have no doubt that this word *accrued* was used by the legislature, so far as it applies to the word *contract*, as synonymous with *made*, or *executed*, although such is not ordinarily its strict signification. It is certainly more properly applied to the words "debt, and cause of action." If it means anything, as applied to the word contract, it must refer to the place where the contract was finally executed, and became obligatory upon the parties ; for in no other sense can a contract be said to accrue. One meaning of the word is, to grow out of, or, to result from ; and an executed contract may, with propriety, be said to have grown out of, or resulted from, the negotiations of the parties. Certain it is, to our minds, that the legislature here meant to designate the place where the contract is made. This contract having been made in the plaintiff's county, he had a right to bring his action there. In *Porter* v. *Boardman*, 17 Ill. R. 594, the plaintiff did not reside in Cook county, although the contract was there made ; and we held that he could not bring his action there. The demurrer to the replication was properly overruled.

We think the basis laid down for and adopted by the jury, in the estimation of the damages, was wrong. By the terms of the contract, Phelps was bound to deliver the corn at his warehouse, at Point Isabel, on or before the 1st of August, 1854, at the option of the purchaser ; and if it was not taken away immediately, McGee had to pay storage, as stipulated. Phelps could be guilty of no breach of the contract before the first of August, except upon a demand made by McGee. None such was made, and the corn, or, at least, a part of it, was not delivered at that time. On that day, therefore, Phelps was guilty of the breach, and not afterward. For that breach alone could he be sued on the contract. On that day the damages accrued to the plaintiff below, and only for such damages as accrued on that day could he recover in an action on the contract for such breach ; and the true measure of damages was the difference between the value of the corn on that day and at that place, and the contract price. A different rule, however, was adopted in the court below, and that was, the difference between the contract price and the value of the corn on the 31st of May, the next year ; when the demand and refusal to deliver were made. The refusal to deliver the corn on that

demand, was no breach of the contract; although, had the corn been then delivered, Phelps might have insisted upon such demand as a waiver of the previous breach, and the acceptance of the corn as a satisfaction of the contract.

The judgment reversed and the cause remanded.

*Judgment reversed.*