## Sherwin Cody v. American Educational Company.

### Gen. No. 12.977.

1. MEASURE OF DAMAGES—*in action for refusal to receive delivery of merchandise ordered.* Where merchandise is ordered and the purchaser refuses delivery, the ordinary measure of damages is the difference between the fair cash market value of the merchandise in question sold in open market at the time and place of delivery and the contract price thereof.

2. MEASURE OF DAMAGES—*in action for refusal to receive delivery of merchandise ordered, where there is no market value.* In such a case the true measure of damages is the difference between the cost of production and the contract price.

Action commenced before justice of the peace. Appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1906. Reversed and remanded. Opinion filed January 21, 1907.

JOSEPH CUMMINS, for appellant.

HARRY A. DAUGHERTY, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

This is an appeal from the Superior Court in a suit which initiated in the court of a justice of the peace of Cook county. The trial in the Superior Court was before the court without the interposition of a jury, by the agreement of the parties.

There is no dispute of fact here, as the court at the conclusion of Cody's testimony entered a finding and judgment for defendant, appellee here.

The only question here presented is the rule of law governing the measure of damages for breach of the contract resting in the evidence of Cody.

Appellee agreed to take 500 sets of school books, entitled "Composition," "Grammar and Punctuation," "Constructive Rhetoric," and "Word Study." The price agreed upon was fifty cents a set plus the cost to Cody of an insert of a title page bearing the

imprint of "American Educational Co., Chicago." The books were made pursuant to contract, and when delivery was attempted to be made to appellee it refused to receive them, for what reason does not appear. The insert, the cost of which was twelve dollars, was approved by one Patterson for appellee. The books were copyrighted in the name of Cody.

The court refused to allow Cody to testify as to the cost of the books, on the ground that the cost of manufacture was immaterial, and held as a matter of law "that the measure of damages for breach of the contract * * * is the difference between the fair cash market value of the books in question sold in open market at the time and place of delivery, and the contract price for said books." This ruling of the learned judge upon the evidence last quoted and upon the proposition of law cited, is assigned for error.

An inflexible rule of the law of damages is, compensation to the injured party for loss suffered by the wrong of another as fully and completely as a just consideration of the rights of the latter will permit. The measure of compensation varies with conditions underlying each particular case. One of the best known to the law and more frequently invoked than any other, is that measure held by the learned trial judge as applicable here. Another rule is the one contended for by appellant as applicable to the facts developed in this case. These and other rules are adapted to varying conditions rightfully when it is demonstrable that such rule has worked to fully compensate the complaining party for the injury suffered at the hands of the wrongdoer. C. Y. C. Title Damages states the rule thus: "As a general rule the theory upon which the law allows damages for the violation of a civil right, is based upon the doctrine that where a civil injury has been sustained the law provides a remedy which should be commensurate to the injury sustained. The inquiry must always be:

What is an adequate remedy to the party injured?''
In foot-note 1, numerous cases are cited confirmatory
of the text.

It is always the object of the law to award com-
pensatory damages, or such damages as the word em-.
ployed to characterize them indicates, as makes good or
replaces the loss caused by the wrong or injury. They
proceed from a sense of natural justice, and are de-
signed to repair that of which one has been deprived
by the wrong of another.

While counsel for appellee do not seriously dispute
the principle of admeasuring damages contended for
by appellant as a legal factor when applied to suit-
able facts, yet they assert that such principle is not
applicable to the facts in this record.

In Kingman v. Hanna Wagon Co., 74 Ill. App. 22,
the court said (on p. 29): ''The general rule of the
common law is stated to be, that damages are to be as-
sessed as the pecuniary amount of the difference be-
tween the state of the plaintiff upon a breach of the
contract, and what it would have been if the contract
had been performed. In other words, the measure of
damages is the benefit that the plaintiff would have
received if the contract had been kept. He is, so far
as money can do it, to be placed in the same situation
as if the contract had been performed. Leake Dig. of
the Law of Contracts, 1044.

''While the general rule is that where there is a con-
tract to deliver goods at a certain price, and the pur-
chaser refuses to accept and pay for the goods, the
measure of damages is the difference between the con-
tract price and the market price, because the seller
may take his goods into the market and obtain the cur-
rent price for them, yet where from the nature of the
article there is no market in which the article can be
sold, the rule is not applicable. Leake, *supra,* 1060.''

The rule for the measurement of damages in the lat-
ter case is the difference between the cost of manu-
facture—all constituent elements of cost considered—

and the contract price. If the latter exceeds the former, the difference will be the measure of compensation. If not, it will resolve itself into a case of *damnum absque injuria,* and nominal damages only permissible. Masterson v. Mayor of Brooklyn, 7 Hill, 61; B. & O. Ry. v. Stewart, 29 Atl. Rep. 964; Hinckley v. Pittsburgh Bessemer Steel Co., 121 U. S. 264.

In affirming Kingman v. Hanna Wagon Co., the Supreme Court said, 176 Ill. 545, on page 557: "Appellant contends that the proper measure of damages was the difference between the contract price and the market price at the time and place of delivery. This undoubtedly is the general rule under a contract to deliver goods at a certain price, and when the purchaser refuses to accept and pay for them, because the seller may take his goods into the market and obtain the current price for them, yet, when, from the nature of the article, there is no market on which the articles can be sold, this rule is not applicable. * * * The rule contended for by appellant is not applicable to this case." .

The rule contended for by appellant here is the one adopted in the Kingman case, *supra,* which this and the Supreme Court has said is the correct rule of measurement of damages under the facts in that case. This rule finds abundant support in fact and law by reasoning and ruling in many well considered cases cited here and in the decisions from which quotations have been here indulged. It now remains to be seen whether or not the facts of this case are equally within the reasoning of the law so applied as to make such rule of law the governing principle here.

It is said that the evidence of appellant establishes the fact of a market for his books, the books in question. Such a contention, we think, rests upon a misapprehension of the effect of appellant's evidence on this point.

Appellant's evidence is susceptible of but one interpretation, which is, that there is a market price for the

same character of books; not a market price for the
books in question, with the insert leaf bearing the
superscription and address of appellee. Such books
would have no market value as second-hand books, but
were it possible to so dispose of them, the effect of such
sale would naturally react upon appellant by inju-
riously affecting the market price of his own publica-
tions, and as to the 500 sets in question, create a com-
petition in sale and in price, both undesirable and un-
profitable. The insert leaf with the name and address
of appellee was as effectual in destroying the market
value of the books in question as either the wagons
of a particular make, or the steel rolled and drilled
in a particular way, in the cases cited, were in destroy-
ing their market value. Furthermore, by the terms
of the contract appellant had done all things incum-
bent upon him to do; the duty alone rested upon ap-
pellee to receive and pay for the books. Whatever
profit there was to be reaped by appellant in the trans-
action was the difference between the cost of produc-
tion and the contract price which appellant was en-
titled to receive at the time he proffered delivery and
appellee refused to accept. The contract required
nothing more at his hands than what he had al-
ready done, and neither did the law. A failure
to accept the books and any consequent damage re-
sulting to appellee from breaking its contract is no
concern of appellant, and the latter is not bound to
seek a market in order to dispose of them for appel-
lee's benefit. No duty rests upon the vendor to create
a market price for goods to take which, pursuant to
contract, the vendee has refused. Whenever the law
imposes upon him the duty to dispose of the contract
goods, it is to do so in a market already existing and
at the price of such market. The testimony here fails
to disclose any market price for the 500 sets of books
here in dispute in the condition in which they had been
made for appellee under the contract. If the failure
of appellee to keep its contract by receiving the books

and paying for them at the time they were offered, imposes upon it any loss, such loss includes the difference between the cost of manufacture and the contract price as appellant's damages for such breach of contract. No other measure of damages than this will satisfy the requirements of the law that appellant be compensated for the injury suffered by him arising from breach of contract by appellee.

Sutherland on Damages, sec. 649, also states the rule in these words: "The rule which measures the vendor's damages on the refusal to accept goods contracted for by the difference between the contract price and the market value at the time and place of the breach, some courts have said, will not always afford compensation where there has been breach of a contract to accept an article which has been manufactured after a prescribed measure, pattern or style. The measure of damages in such a case is held to be the full amount of the contract. * * * The manufacturer is entitled to the full benefit of his contract, and cannot with any certainty have this full benefit in any other way." Beardsley v. Smith, 61 Ill. App. 340.

As the books contracted for were made conformable to contract, and are still on hand owing to appellee's breach of the contract in not accepting them when proffered, and there being no market price for them at the time and place of such breach, appellant, in accordance with the reasoning and authorities cited, is entitled to recover as the measure of his damages at least the difference between the cost of making the books and the contract price, plus twelve dollars, cost of making the insert leaf.

Appellant in support of his contention as to the rule of law applicable to the assessment of damages as applied to the facts of this case, cites Rice v. Penn Plate Glass Co., 88 Ill. App. 407, in which it is held that the measure of damages as to goods not yet manufactured in pursuance of a contract, is the profit which would have been made had the contract been fully performed.

This decision appellee challenges as announcing an incorrect principle of law, which this court impliedly admitted by refusing to follow it on a second appeal in 117 Ill. App. 357. In the latter decision the difference between the contract and market price or value at the time of delivery under the contract, was adopted as the true measure of damages, the latter doctrine meeting with the approval of the Supreme Court on final appeal, reported in 216 Ill. 567. Counsel have evidently mistaken the effect of the decisions and the facts underlying them, upon which they are predicated.

On the second trial of the Rice case, additional facts of a controlling nature were established, aside from which an error of fact was committed by this court in its first decision. That decision was predicated upon the erroneous finding that the contract was to manufacture a particular kind of glass not regularly manufactured by the plaintiff; while the contract in fact was a sale of so much glass of the various sizes contracted for. This is evident from the following language in the opinion, 117 Ill. App. on pg. 360: ''The error of the court in its opinion in the former appeal * * * was induced by the fact that appellee is a manufacturer of such glass as is described in the contract, and the parties, while they did not so contract, contemplated that appellee would manufacture the glass.''

The additional fact established on the second trial, and not proven on the first, was that the defendant, after breaking the contract, directed the plaintiff to sell the undelivered glass. Acting under this authority the plaintiff sold the undelivered glass, and the measure of damages—the sale having been fairly made—was held to be the difference between the contract price and the amount realized from such sale. The opinion of the Supreme Court in Penn Plate Glass Co. v. Rice, 216 Ill. 576, fully corroborates this statement. On page 573 it is said: ''The opinion filed upon the first appeal shows the judgment was reversed and the cause

remanded for a new trial. It also appears from the last opinion, and from the testimony of certain witnesses found in the record filed on this appeal, that the evidence upon which the Appellate Court made its finding of fact that the defendant requested the plaintiff to sell, and plaintiff sold, the undelivered glass for the best obtainable prices, and upon which said court held on the last appeal, that the measure of damages was the difference between the contract price and the price at which the glass was resold, *was not in the record when the case was before the Appellate Court the first time;"* and further, on page 574: "From an examination of the opinions of the Appellate Court and the record on file in this case on this appeal, we are convinced that the case made on the last trial so far differed from the case presented to the Appellate Court upon the first appeal, that the court was not bound, as a matter of law, to follow the rule as to the measure of damages announced in its first decision, but might apply the law, as it then viewed it, to the new state of facts as they appeared in the last record." In no way does the second opinion in the Rice case in this court, or the opinion of the Supreme Court in case *supra,* detract in any way, by either criticism or ruling, from the force of the doctrine as to the measure of damages announced in this court's first decision of the Rice case as applied to the facts there found by this court and in the then condition of the record.

It is a correct statement of a legal principle pertinent to facts similar to those stated in the court's opinion. It is equally applicable and controlling as authority here.

The Superior Court erred in refusing to admit testimony as to the fair cost of making the books in question, and in holding the proposition of law tendered by appellee governing the measure of damages to be the difference between the fair cash market value of the books and the contract price therefor.

248     APPELLATE COURTS OF ILLINOIS.

VOL. 131.]     Chi. Tel. Co. v. Com. Union Assur. Co.

There is no evidence in the record showing the cost of making the books. If there was, the cause having been submitted to the court for trial without a jury, we might enter judgment here for appellant. As this cannot be done in the condition of the record, the judgment of the Superior Court, for the errors indicated, will be reversed and the cause remanded for a new trial conformable to the rules of law here announced.

*Reversed and remanded.*