WILLIAM S. HARMAN *et al.*

*v.*

THE WASHINGTON FUEL COMPANY.

*Opinion filed June 19, 1907—Rehearing denied October 2, 1907.*

1. CONTRACTS—*when shipper is bound to furnish cars.* A contract for the sale of coal at a net price per ton f. o. b. cars at the mine, which makes the seller's agreement subject to strikes, car supply and other contingencies beyond its control, implies that the shipper is to furnish the cars, and if the parties themselves adopt such construction and the shipper furnishes cars until it ceases to make shipments because of an advance in the price of coal, it can not escape liability for breach of the contract by claiming that under the legal meaning of the term "f. o. b." the purchaser was bound to furnish the cars.

2. SAME—*when judgment will not be affirmed for want of definite proof of damages.* Where the plaintiff in an action for damages for breach of a contract to deliver coal proves substantial damages and is ready to make definite proof thereof, but fails to do so because the court, by its unauthorized interpretation of the contract, holds there was no cause of action, the judgment will not be affirmed, on appeal, upon the ground that the record fails to show definite proof of damages.

3. APPEALS AND ERRORS—*when rule that judgment will not be reversed to allow the recovery of nominal damages does not apply.* The rule that a judgment will not be reversed to enable a party to recover merely nominal damages does not justify an affirmance where the record shows that the plaintiff has suffered substantial damages, although there is no definite proof of the amount.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ROBERT W. WRIGHT, Judge, presiding.

LESLIE H. WHIPP, for appellants.

J. B. LANGWORTHY, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

This action of assumpsit was commenced by appellants, partners doing business as the Harman & Black Coal Company, in the superior court of Cook county, against appellee, the Washington Fuel Company, a corporation mining and selling coal, to recover damages for breaches of two contracts in writing dated June 1, 1902, whereby the defendant agreed to furnish coal to the plaintiffs for stipulated prices per ton at its mine at Sullivan, Indiana, subject to strikes, car supply, railroad blockades and other contingencies beyond its control. By one contract defendant agreed to furnish plaintiffs with 5000 to 8000 tons of Bunker Hill 4-inch lump coal from the date of the contract to April 1, 1903, at $1.40 per net ton, f. o. b. cars at mine, shipments

to be made at the rate of one to two cars per day. By the other contract defendant was to furnish 5000 to 7000 tons of Bunker Hill 1¼-inch lump coal from the date of the contract to April 1, 1903, at $1.15 per net ton, f. o. b. cars at mine. By the affidavit of plaintiffs' claim filed with the declaration a set-off of $1231.12 was admitted to be due the defendant, and the sum of $4000 was claimed after allowing the set-off. The defendant pleaded the general issue, with an affidavit of merits and a set-off of said sum of $1231.12 for coal furnished in March, 1903, and not paid for. On the trial it was agreed that all the coal that was delivered under the contract for 4-inch coal was 2513 tons and under the contract for 1¼-inch coal 3808 tons, all of which was paid for except coal amounting to $1231.12. Plaintiffs proved that the market price of coal at the mine advanced beyond the contract price in the latter part of November, 1902; that the defendant then ceased to ship coal under the contract; that the price of coal remained very high thereafter, and that plaintiffs suffered damages far beyond the amount of the set-off. At the close of all the evidence the court instructed the jury to return a verdict against the plaintiffs for $1231.12, the amount of the set-off, which was done, and thereupon the court rendered judgment on the verdict, and plaintiffs prosecuted an appeal to the Appellate Court for the First District. The branch of that court affirmed the judgment, and a further appeal was prosecuted to this court.

The record shows that the trial court construed the contracts in such a way that under the admitted facts there was no breach of either. If that construction was correct there was neither cause of action nor damages, and, as a matter of course, the trial court refused to consider the question of damages at all. Although proof of substantial damages had been made in a general way and plaintiffs desired to make definite proof of the amount of such damages, it was not done because of the ruling and decision of the court.

The Appellate Court did not sustain the view of the trial court, but decided that no error was committed in giving the peremptory instruction because there was no sufficient evidence of damages suffered by the plaintiffs from which the jury could have made a computation of the amount. In the opinion of the Appellate Court it was said that the breach of the contract for 1¼-inch coal occurred on April 1, 1903, and there was no evidence of any difference on that day between the contract and market prices; that as to the contract for 4-inch coal, the only evidence was the testimony of a witness that, taking the figures which he had given the jury and computing the difference between the contract price and the market price, the damages amounted to "ten thousand seven hundred and seventy-nine dollars and some odd cents," and that such statement was a mere conclusion of the witness and insufficient evidence of the amount of damages. The effect was that the plaintiffs were defeated upon one ground in the trial court and the judgment of the trial court was affirmed in the Appellate Court on a different ground, which, in our opinion, did not justify the court in directing a verdict.

The defendant had all of the time up to April 1, 1903, in which to furnish plaintiffs with the coal under the contract for 1¼-inch coal. The parties evidently contemplated delivery from time to time, since the contract provided that settlements should be made on or before the first of each month for the previous month's shipment, and shipments were actually begun in August, 1902, under the contract and were continued until the market price of coal rose above the contract price, and yet the agreement would have been complied with by a delivery of the coal at any time up to April 1, 1903. (*Phelps* v. *McGee*, 18 Ill. 155.) There was no evidence of the market price of coal at the mine on that day, and only nominal damages could have been given for the breach of that contract. The other contract provided for shipments at the rate of one or two cars per day, and

defendant was bound to ship at least one car every day, subject to the conditions stated in the contract. Beginning in September, 1902, defendant shipped coal as agreed until the market price at the mine advanced considerably above the contract price, in the latter part of November, when the defendant ceased to ship coal. The failure to ship was not due to strikes, car supply, railroad blockades or other contingency mentioned in the contract, and the defendant mined and shipped large quantities of coal to other persons while the high prices prevailed. The plaintiffs proved the market price of coal at the mine, in a general way, during the period of the defendant's default. They proved the market prices of 4-inch lump coal at the mine at different dates in November and December, 1902, and January and February, 1903, and the general conditions and fluctuations of the market. The testimony covered the whole period, and showed the market price on many different days and that the same price prevailed for a period stated by the witness, but it did not show the market price from day to day in such a way as to fix the exact amount of damages. In that state of the evidence it appears that the court construed the contract as requiring the plaintiffs to furnish the cars at the mine for the coal, and as there was no pretense that plaintiffs had furnished cars, there was no cause of action under that construction of the contract. It had been proved that the defendant furnished all the cars for the coal that was shipped and never asked plaintiffs to furnish any, and the plaintiffs asked leave to amend the declaration to show the interpretation put upon the contract by the parties themselves as to who was to furnish cars. The court denied the leave asked, on the ground that the proof already showed the interpretation put upon the contract in that respect by the parties. Plaintiffs then endeavored to prove what was the custom as to furnishing cars under a contract to deliver coal, or to show the trade meaning of the words "f. o. b." Defendant interposed an objection that custom could not be

proved to contravene the legal meaning of the words of the contract, and that objection was sustained by the court. Repeated attempts to prove the custom of coal operators to furnish cars under a contract to sell coal f. o. b. cars at the mine were made and objections were sustained by the court. The court having held that there was no cause of action, the plaintiffs' attorney stated that the witness on the stand could go through and give the damages every day, but said that he wanted to arrange with defendant's attorney to waive computing the amount of the damages. Defendant's attorney said that the data were all in, and if the case were going to the jury it might be serviceable, but as it was it was utterly useless. Plaintiffs' attorney asked if there would be any objection to the witness stating the amount of damages, and defendant's attorney said that there was no use in it and that it was complicating the record, and the court said that it did not make a particle of difference whether it was in or not. Plaintiffs' attorney desiring to have some statement in the record, the court consented, and the witness gave the figures already mentioned as the amount of his computation from the market prices he had already stated. Plaintiffs were prepared to, and desired to, go on and show the market price from day to day and the damages on each car-load of coal, but such proof was entirely useless under the ruling of the court, and the witness was permitted to state the amount of damages computed by him only because the plaintiffs' attorney insisted upon having something of the kind in the record. The judgment was affirmed for want of proof which the plaintiffs were ready and willing and endeavored to make. The general rule is, that the judgment of a trial court will not be reversed on account of a ruling which was correct, merely because the court gave a wrong reason for such ruling; but in this case the defendant was precluded from making the point in the Appellate Court that damages were not proved in detail, and under the circumstances the proof of damages was sufficient. It was

clearly understood at the trial that there was no objection to the method of proving damages.

There has been a difference of opinion between different courts as to whether the duty devolves upon the seller or the purchaser to furnish cars where there is a contract for delivery f. o. b. cars and the contract is silent as to which one shall furnish the cars. Some courts have followed the rule applicable in other cases, that where one makes an agreement to perform an act, whatever is necessary to the performance of the act is a part of his agreement, and it is implied that he will secure the means necessary to the accomplishment of the act. The natural meaning of the words "free on board" is, that the goods are to be furnished by the seller on board free of all charges and expenses up to and including the loading, and courts adopting the rule just stated hold that the seller must furnish the cars. Other courts, apparently following the rule established when goods were to be delivered free on board a ship, have held that the duty to furnish cars rests upon the purchaser. The term in question was frequently inserted in contracts for sale and delivery of goods free on board a vessel, and it was held that the seller was under no obligation to act until the purchaser should name the ship on which delivery was to be made, for the reason that until the seller knew the ship he could not put the goods on board. It was held that the seller was entitled to know on what ship and where he was required to deliver the goods, and that rule has been referred to although it is manifestly wholly unsuited to shipments by rail under present conditions, at least unless the sale is made to a railroad company or the means of transportation contemplated is under the control of the purchaser. The question which is the correct construction of such a contract has not been determined by this court and is not now determined. The decision in *Consolidated Coal Co. v. Schneider,* 163 Ill. 393, was upon the ground that the parties themselves had put a construction

upon the contract. The court there said that the require-
ment of the contract that appellee should deliver the coal
free on board the cars at the mine could have no bearing on
the question as to whose duty it was to furnish cars, and in
that view there was, of course, no construction of the mean-
ing of the term. As the parties had construed the contract
for themselves their construction was adopted, and it was
not necessary to consider the meaning of the term. The
same condition exists in this case, in which the parties them-
selves construed the contract as requiring the defendant to
produce the cars. Aside from that construction adopted by
the parties, it cannot fairly be said that the contracts were
silent as to who was to furnish the cars. Each of them pro-
vided that the agreement of defendant to furnish the coal
was to be subject to strikes, car supply, railroad blockades
and other contingencies beyond its control, which clearly
implied that the defendant was to furnish the cars. By the
contract itself and the construction put upon it by the par-
ties the cars were to be furnished by the defendant unless
there should be a failure of the car supply, and the trial
court erred in construing the contract otherwise.

As the plaintiffs were ready and willing and offered to
prove their damages it would appear to be unjust to affirm
the judgment for want of definite proof on that subject.
The rule that a judgment will not be reversed to enable a
party to recover merely nominal damages would not justify
an affirmance, where, as here, the record shows that plain-
tiff suffered substantial damages. There is no ground for
saying that the plaintiffs on another trial would not recover
more than nominal damages.

The judgments of the Appellate Court and superior
court are reversed and the cause is remanded to the superior
court.                              *Reversed and remanded.*