## Chalmers Motor Company of Illinois, Defendant in Error, v. Charles Maibaum, Plaintiff in Error

### Gen. No. 18,523.

1. AUTOMOBILES AND GARAGES, § 4*—*when finding that fraudulent representations were made in procuring cancellation of order sustained by the evidence.* In an action by an automobile company for loss of profits on the sale of an automobile alleged to have resulted from false and fraudulent representations made by the defendant to induce the plaintiff to cancel defendant's order for an automobile, a finding that such representations were made *held* sustained by the evidence.

2. FRAUD, § 58*—*when action for deceit lies for procuring cancellation of order.* An action may be brought in tort for fraud and deceit in procuring the cancellation of a contract of purchase without the cancellation being first set aside in equity.

3. FRAUD, § 118*—*measure of damages in action for deceit in procuring cancellation of order for automobile.* In an action by an

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

automobile company to recover damages resulting from fraud and deceit in securing a release or cancellation of an order for an automobile, *held* that a recovery for loss of profits was erroneous; that the measure of damages was the difference between the market price and the contract price; and that plaintiff was entitled to nominal damages only, it appearing that the automobile had a standard price and was sold at that price to a third party soon after defendant procured a cancellation of his order.

Error to the Municipal Court of Chicago; the Hon. HARRY OLSON, Judge, presiding. Heard in this court at the October term, 1912. Reversed and judgment here. Opinion filed May 4, 1914.

ELIJAH N. ZOLINE, for plaintiff in error.

GARNETT & GARNETT, for defendant in error; CYRUS L. GARNETT, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

This is a writ of error sued out by Charles Maibaum to reverse a judgment of $657.15, recovered in the Municipal Court of Chicago by the Chalmers Motor Company of Illinois against him on April 3, 1912. The action was in tort, and in the "statement of claim" the plaintiff averred that June 14, 1911, Maibaum agreed in writing to buy an automobile of the plaintiff for $1,500 in cash and the transfer of a secondhand automobile owned by him, and that on June 23, 1911, he induced the plaintiff to cancel said agreement by means of certain false and fraudulent representations. Thereby, the "statement" alleges, the plaintiff was prevented from making said sale of the automobile and "has lost profits in the sum of $750 which it would have made if the defendant had not made said representations."

"Plaintiff," the statement concludes, "credits defendant as against the damages herein claimed with $50 paid by defendant on or about June 23, 1911, when plaintiff cancelled said contract."

The evidence on which the judgment was rendered tended to show and, for the purpose of the question

before us may be assumed to have shown, that the defendant Maibaum on June 14, 1911, came to the place of business in Chicago of the Chalmers Motor Company of Illinois and signed an order, the essential part of which was:

"6/14/1911.

Chalmers Motor Company of Illinois,

Gentlemen: Please enter my order for the following described car and accessories:

One Chalmers 1911-40 Torpedo Touring Car, Colors Red, complete with catalog equipment herein specified, for which I agree to pay Three Thousand Dollars ($3,000) F. O. B. Chicago. To be paid as follows:

Allowance $1,500 upon signing of contract and balance of $1,500 on delivery of car.

Remarks: Allowance of $1,500 for 1910 Pony in present condition and with present equipments. Salesman—Levy. Delivery—Rush."

That on June 21, 1911, Maibaum came again to the Chalmers Co.'s place and talked with a Mr. Collander, manager of the service department of the Company, and wanted to know from him if he could cancel the contract, saying that "it would be impossible for him to take that car, that he couldn't make the payments on it as he hadn't the money at the time, that he had suffered some very sudden losses and expected to go to France a little later, and that he had concluded that he would keep the car that he had." Mr. Collander gave him no answer but referred him to Mr. Levy, the president, treasurer and manager of the Company.

That on June 22, 1911, Maibaum called again at the store of the Company and saw Mr. Levy and told him that he would like to get out of taking that car, cancel the contract because he found himself financially unable to take it and pay for it; that he did not have the money; that he was in some difficulties; that he might have to go to Europe, and that the car that he had was running very well and would do until fall, at which time he would get another car from Levy, because he would not consider any other make of car. In answer to a question by Mr. Levy whether he wanted to cancel

the contract so as to let some other concern take advantage of it, he replied in the negative.

That Mr. Levy believed the statements Maïbaum made, but said to him, "It is very well for you to cancel the contract, but your car is now in transit from the factory." To this Maibaum replied, "I will tell you what I will do, I will give you $50 for your expenses." That Levy took the $50, saying, however, to Maibaum that if he bought the other car it would be credited on that car. Levy thereupon also took the written memorandum contract from the safe, marked it across the face "Voided 6/22/11. Chalmers Motor Car Co. of Ill. Levy," and gave it to Maibaum. Mr. Levy had the $50 credited in the books of the Chalmers Co., "Cash $50, Charles Maibaum, deposit on car," but testified that "according to Maibaum's idea it was to cover expenses on the car that had been ordered by him and that "it was paid to me for both purposes, for voiding the contract and for applying on a new car."

Meanwhile, on June 21, 1911, Maibaum had ordered from another concern a new automobile known as a Locomobile. He received this car from the "Locomobile Company of America" June 23, 1911, paying therefor $2,200 in cash and turning in his used car. On that day or on June 24, 1911, Levy saw Maibaum in his new machine and on the following day called him up on the telephone and said to him, "I saw you bought a Locomobile; didn't we have an understanding?" Maibaum said, "You got all the money you want out of it." Levy said, "You made an agreement with me. You were going to buy another car in the fall." Maibaum replied, "A man has a right to change his mind."

This suit, brought on July 1, 1911, followed.

June 24th the car ordered by Maibaum came to the shop of the plaintiff in Chicago. It was sold by it to Edward F. Swift for $3,000 cash on July 5, 1911.

All the matters above set forth are not admitted by the defendant. On the contrary he strenuously in-

sists that he made no representations to either Levy or Collander about his financial condition in his interviews with them, and he brought forward some corroborative testimony by persons who heard the respective conversations.

We agree with counsel for Maibaum that the statement as to his financial condition is the only one of Maibaum's testified to on which in any event a suit for fraud and deceit in procuring the agreement which cancelled the original contract could be properly based. The others are rather promises or conjectures than representations of an existing fact, but after (according to the request of counsel) reading in full the testimony of the witnesses, we do not feel justified in overruling the finding of the court below that the plaintiff's case as outlined above was made out.

It is not definitely stated by Levy, that we can find, that it was the representation that Maibaum had no money with which to pay for the machine if he took it, that induced him to cancel the contract, but this is legitimately inferred from his testimony that he "believed the statements" of Maibaum and that "he relied on them in making the contract void."

We are relieved from any consideration of whether there is sufficient evidence in the purchase of the Locomobile by Maibaum and the payment of $2,200 for it on June 23, 1911, of the falsity of the representation that he had no money on June 22, 1911, with which he could, when the Chalmers automobile arrived on June 24, pay $1,500 for it, by the distinct admission made for him at the outset of the trial, that he had on June 22, 1911, $1,500 with which he could have paid for the Chalmers automobile.

Two lines of attack upon the judgment, however, are taken by plaintiff in error independent of the questions of fact alluded to. The first is that the cancellation of the contract of June 14th was, as was held by the court below (Held Proposition of law II) equivalent to a release, that said release was not procured by fraud

going to the execution of it by the plaintiff, and that said release is binding on the plaintiff until set aside in equity; and, moreover, as was *not* held by the court below, that the present action in tort cannot be sustained unless said release is set aside and the $50 paid by the defendant on its execution be refunded or tendered to him.

The defendant in error admits that no recovery could be had on the contract of June 14, 1911, without the setting aside of the "cancellation" (which, however, he denies is a "release") in a court of equity, but insists that this action is of a different nature—one brought in tort for fraud and deceit in procuring on June 22, 1911, the contract of cancellation on the payment of $50; and that such an action can be maintained while holding the contract of cancellation valid and effective.

To this point counsel for defendant in error cites cases which we deem in point, and we are disposed to agree with his contention. At least for the purposes of this discussion it may be assumed that it is well taken, for in our view the alternative objection to the judgment made by the plaintiff in error is insuperable. It is that the measure of damages adopted by the court below which resulted in the judgment was incorrect and inapplicable in the present cause. The $657.15 for which it was given was computed as follows: The evidence tended to show the car which Maibaum contracted with the plaintiff to buy from it cost the plaintiff $2,292.85; that the fair cash value of the used car Maibaum was to turn in in the trade was $1,500, and that the profit therefore which the plaintiff would make by taking it and $1,500 cash from Maibaum for the new car was $707.15, of which if the $50 for the cancellation paid was credited, $657.15 would remain as the loss by the Chalmers Company through the deceitful action of the defendant.

The question of fact as to the value of the used automobile, which is raised by the plaintiff in error with much insistence, may be ignored, for unless there is

a different rule of damages in a suit brought for deceit in securing a release or cancellation of an order for the purchase of an already manufactured article, which release or cancellation is nevertheless affirmed and allowed to stand, from that which would govern in a suit brought by the seller against the purchaser for a refusal to receive and pay for the goods purchased, we think this method of computation is in the present case wrong.

We know of no such difference and of no reason why there should be one. The defendant in error does not place his argument on the existence of such a difference, but on the proposition that in either kind of case if there be no "market value" for the goods which a purchaser refuses to receive, "lost profits" are a proper measure of damages.

There are undoubtedly cases in which, in the absence of the possibility of applying the more common and general rule concerning such defaults, lost profits are taken into account. But if these cases are not of goods to be manufactured, they are exceptional in some other respect, as, for example, the case of *Cody v. American Educational Co.*, 131 Ill. App. 240, where the goods were so specially prepared for the intending purchaser as to materially diminish their value to all other persons.

It is quite manifest that the addition of a painted monogram on the panel of the automobile in question here and the presence of easily detached separable accessories did not so affect the value of the car which was left on the hands of the vendor. It was sold within a very few days to a third party for the exact price for which it had been bargained by the cancelled contract to Maibaum.

The rule which governs this case in our opinion is thus stated in the headnote of *Phelps v. McGee*, 18 Ill. 155:

"Where an article is to be delivered at a place certain, on or before a day named, * * * the measure

of damages, in case of a breach, will be the difference between the value of the article, on the day and at the place named, and the contract price.''

And in the headnote of *Foos v. Sabin*, 84 Ill. 564:

''Where cattle are sold for future delivery, if, at the time and place of delivery, they are worth as much as the contract price, the seller, not being damaged, cannot recover of the buyer, for not accepting the same, more than nominal damages.''

And in the headnote of *Kadish v. Young*, 108 Ill. 170:

''In ordinary cases of contracts for the sale of personal property for future delivery, where the purchaser fails to receive and pay for it at the stipulated time, the measure of damages is the difference between the contract price and the market or current value of the property at the time and place of delivery.''

The language of the Court in each case justifies the headnote.    Moreover in *Kadish v. Young, supra*, the Supreme Court said:

''No court, so far as our researches have enabled us to know, ever held that the price paid by the seller for an article sold and contracted to be delivered in the future, was a circumstance to be taken into consideration by the jury in determining the amount of damages the seller is entitled to recover upon the buyer's refusing to receive and pay for the property.''

If this language is to be taken as meaning that in no decided case were estimated profits which were lost by refusal to receive or by countermanding an order, considered proper to prove, it may be too sweeping; but undoubtedly the general rule is as stated.

Indeed the defendant in error's argument admits the rule of damages so to be, when ''the subject-matter'' has a ''market value'' and places its whole reliance on the position that the automobile ordered by Maibaum had no market value.    If it had no ''market value'' it certainly had a ''market price,'' which by Held Proposition VII, the court below held to be synonymous and to be ''a usual and ordinary selling price of the automobile here in question at the place of delivery.''    It had at all events ''a value'' and ''a current

value," as is shown by the fact that the Company, apparently formed for the express purpose of marketing machines of this make, sell very many of them and sold this one eleven days after the order of Maibaum was countermanded for the same price Maibaum had been charged, without being obliged to take a part of the price in a secondhand car.

We think the propositions that there was no "market value" of the car in question, because it could not find an instant purchaser like listed stock or bonds on a stock exchange, or warehouse receipts for inspected grain or meat on a produce exchange, but required, like most merchandise, shops and salesmen to market, and the proposition that there was no market value because the manufacturer fixed "a list price" and put it into a catalogue, and that there was proved to be no "market value" because Mr. Levy said so after testifying that he had sold fifteen cars of this particular model for $3,000 each, "the regular price", during the preceding year, are all unsound.

We do not regard *Lovejoy v. Michels,* 88 Mich. 15, as in point or, if in point, controlling. The question really at issue in that case was whether the "market price" was a "reasonable price" under the proof of an illegal combination to raise prices. There is nothing of the sort in the case at bar. The automobiles were sold in competition with other models and other makes. There was a standard price and it was obtained in the case of this car and in that of many others, as the proof shows, by means no different in essence from those by which most goods are sold.

The plaintiff was entitled to only nominal damages, in our opinion, and we shall enter here the judgment we think should have been entered below—a judgment, that is, for one cent damages and the costs in the court below. The costs of this court will follow the usual course in cases of reversal.

*Reversed and judgment here.*