# CHARLESTON.

### C. E. PAULEY *v.* A. A. DECKER.

Submitted November 1, 1921.   Decided November 15, 1921.

1.  EVIDENCE—*In Action for Breach of Covenants of Warranty, Oral Evidence May be Heard to Locate Part of Land Lost in Ejectment Action.*

    In a suit for damages for breach of covenants of warranty of title in a deed, where the breach is alleged to be for a failure of title to a part of the land conveyed, caused by an adverse judgment in an ejectment suit, in which the grantor and covenantor was plaintiff and a third person was defendant, pending at the date of the deed, parol testimony, properly introduced, may be heard to establish and locate the portion of the land so lost. (p. 486).

2.  COVENANTS—*In Action for Breach of Warranty, Where Vendor Lost Part of Land in Ejectment and Evidence Can be Secured to Show Part Lost it is Error to Direct Verdict for Defendant.*

    In such action where, because of misconception by plaintiff of the evidence offered, it is not clearly shown how much of

the land has been so lost to plaintiff, and it is apparent that legal evidence is in existence and readily obtainable whereby it may be fully shown; and there is sufficient legal evidence introduced in the trial to prove that plaintiff has so lost title and possession to some portion of the land, it is error to direct a verdict for defendant. (p. 489).

3.  APPEAL AND ERROR—*Where Evidence Showed Purchaser Entitled to Nominal Damages for Breach of Warranty, But not the Amount, Held that There Should be a New Trial.*

Where, upon such trial, it is clear that plaintiff is entitled to recover nominal damages, and there is competent evidence introduced showing that his damages will amount to more than $100.00, although the true amount is not sufficiently proved on which to predicate a verdict and judgment, for reasons stated, the appellate court will reverse the judgment for defendant rendered on a directed verdict and award a new trial. (p. 489).

Error to Circuit Court, Kanawha County.

Action by C. E. Pauley against A. A. Decker. Directed verdict and judgment for the defendant, and the plaintiff brings error.

*Reversed and remanded.*

*J. Howard Hundley,* for plaintiff in error.
*Maynard F. Stiles,* for defendant in error.

LIVELY, JUDGE:

In an action of covenant for breach of general warranty in a deed, the Circuit Court of Kanawha County, at the conclusion of plaintiff's evidence and on motion of defendant, A. A. Decker, directed a verdict for defendant and rendered judgment thereon on March 11, 1921. Plaintiff, C. E. Pauley, now prosecutes this writ of error.

On August 5, 1919, A. A. Decker and wife conveyed to C. E. Pauley, with covenant of general warranty, a certain lot in Miami, Kanawha County, which lot is described in the deed as follows: "Beginning at an iron pin set in the ground forty (40) feet from the westerly rail of said railway, at a corner of an alley between the lot hereby conveyed and the land of W. R. Blair, two hundred and fifty-seven

and one-half (257½) feet northerly from a point on the line dividing lands formerly owned by Thomas Crawford from the lands of H. R. Epperly, forty (40) feet distant from said railroad track; thence N. 78° 15′ W. ninety (90) feet along said alley to an iron pin set in the ground; thence S. 8° 38′ W. 56 feet to a stake; thence S. 78° 15′ E. ninety (90) feet to an iron pin set in the ground forty feet westerly from said railroad rail; thence N. 8° 38′ E. fifty-six (56)˝ feet to the place of beginning.'' etc. At the time of this convey-ance, and for sometime previous thereto, a suit in ejectment, brought by A. A. Decker against L. H. Creasey, was pending in the Circuit Court of Kanawha County. Decker's decla-ration in this ejectment suit described the property then al-leged to be owned by him by the same metes and bounds as were used by Decker in his description of the property in the deed to Pauley on August 5, 1919, detailed above. Creasey disclaimed all of the land described in Decker's dec-laration except the portion covered by a deed from John D. Kittinger and wife to L. H. Creasey, bearing date ''the ——— day of ——— 19—'', and entered a plea of not guilty as to that portion. On December 5, 1919, the jury having re-turned a verdict in favor of defendant Creasey, the court rendered judgment thereon, dismissing Decker's suit and awarding costs to Creasey. Pauley filed his declaration in covenant against Decker at August rules, 1920, and Deck-er's failure to successfully assert his title to the property in the ejectment suit is the breach relied on. Pauley intro-duced in evidence Decker's declaration, Creasey's disclaimer and the final order of the court in the ejectment suit. The judgment in the ejectment suit as set out in the final order introduced in evidence did not show what portion of the Decker lot was held by Creasey and confirmed to him; and questions were propounded to plaintiff and J. D. Kittinger in an attempt to show the exact amount and where located; but upon objections the court struck out the answer of plaintiff in this regard, and sustained an objection to the question asked Kittinger.

Plaintiff testified that he and Decker measured the 56 feet frontage of the lot previous to his purchase from Decker and

that during the measurement he (Pauley) held the end of the line at the pin at the corner of the alley (the beginning corner mentioned in Decker's deed to Pauley) and Decker was at the other end; that the 56 feet called for in his deed extended about 6 feet beyond a fence which had been erected by Creasey and which ran the full depth of the lot, namely 90 feet; that Decker promised ''he would establish the line, guarantee the line to me.'' B. M. Green, a civil engineer, surveyed the block of lots in which the Creasey and Decker lots were situated on April 28, 1919, and his testimony together with a map of his survey was to the effect that, measuring from the Epperly line, ''an old established line'', the correct line between the Decker lot and the Creasey lot was practically the same as the fence line erected by Creasey and that the northeast corner of the Decker lot (the beginning corner in Decker's deed to Pauley) would have to be extended between 5 and 6 feet over into the alley to make the 257½ feet northerly from the Epperly line. There was also testimony to show that the distance along the front between the iron pin, mentioned as the beginning point in Decker's deed to Pauley, and the fence erected by Creasy is 50 feet. Creasy testified that the iron pin described in Decker's deed as marking the south east corner is six feet on the inside of his (Creasy's) lot. Creasy also stated that he moved some posts over to straighten his line after the decision of the court in the ejectment suit, but did not say that he did it in accordance with that judgment, nor did he give any testimony explaining just what was decided as the correct line. Testimony was introduced as to the amount plaintiff had been damaged as a result of the loss of six feet of ground, witness Blair stating that he would put it at $500.00. It was further shown that J. A. Hamilton, who purchased the lot from Pauley as having a frontage of 50 feet, paid $1600.00 for the property, $400.00 less than the price paid by Pauley to Decker. At the conclusion of his evidence plaintiff moved for leave of the court ''to amend his declaration by adding thereto a count based on ouster by paramount title without reference to the ejectment suit.'' The court refused the proposed amendment, but offered to permit the plaintiff to take a

non-suit, which plaintiff declined to do. Thereupon the court upon motion by defendant directed the jury to find a verdict for defendant, and a judgment was rendered on the verdict so directed.          ,

The testimony of plaintiff as to what portion of the Decker lot was held by Creasy and confirmed to him in the ejectment suit was as follows:    ''Q. Do you know, or have any knowledge, of a part of this lot that you purchased having been involved in an ejectment suit? A.  I heard it talked of. Q.  Do you know it now? A.  I know it now.  Q.  Between what parties? A.  Between A. A. Decker and L. H. Creasey.  Q.  Do you know what part, if any, of this lot was involved in that suit? A.  I suppose it was the 6 feet, that is what I am short now.''  The court properly sustained defendant's objection to the foregoing answer and struck it out.  The answer is indefinite, not responsive to the question and merely states plaintiff's supposition as to what was decided in the ejectment suit.  The only question in regard to the ejectment suit propounded to witness Kittinger was the following:  ''Do you know anything about this ejectment suit that was brought by Decker against Creasey, what it involved.''  This question is inaptly framed.  There had been no evidence to show that Kittinger knew anything about the ejectment suit and he was therefore not qualified to speak on ''what it involved.''  The objection of defendant to this question was properly sustained by the court.  Parol testimony, properly introduced, to locate and establish the portion of land lost in the ejectment suit, would have been admissible.

The action of the court in directing a verdict for defendant and rendering a judgment of nil capiat thereon is the main error relied upon by plaintiff for reversal.  Inasmuch as the calls in Decker's declaration in the ejectment suit describing the property then alleged by Decker to belong to him and the calls in the deed from Decker to Pauley are identical, and since in the ejectment suit there was a disclaimer by Creasey of all the property so described in Decker's declaration *except that portion covered by a deed from J. D. Kittinger and wife to Creasey,* and since in the ejectment suit

there was a judgment for Creasey, it is clear that by reason of the judgment in the ejectment suit Pauley lost some portion of the land conveyed to him by Decker. It is true that competent evidence was not adduced to show the exact number of feet of ground lost to Pauley as a result of Decker's failure to successfully assert his title in the ejectment suit for all claimed by him under his deed from D. P. Thomas; but it is shown that he lost some part of it and for that reason was entitled to at least nominal damages for the breach of the covenant of general warranty. It further appears that Pauley failed to be put in possession of between five and six feet of the ground conveyed to him by Decker, and the damage for the loss of this amount of ground was shown to be at least $400.00. Although plaintiff did not produce competent evidence to connect the loss of any exact amount of ground with the judgment in the ejectment suit, it is reasonably certain that such evidence exists. In the case of *Indian Refining Co.* v. *Chilton,* decided at this term, Judge RITZ says: "Where an erroneous judgment has been entered denying the plaintiff even nominal damages when the evidence clearly warranted the same, this Court will not refuse to take jurisdiction of a writ of error to reverse such erroneous judgment where it appears that the plaintiff in all probability is entitled to recover, if at all, more than one hundred dollars, but by inadvertence, or by misconceiving the nature of the evidence necessary to establish his rights, failed to properly present the case at the hearing." Also in *Shapiro* v. *Benenson,* 167 N. Y. S. 1004, it is held: "Although a case will not be reversed to allow a recovery of nominal damages, where one was entitled to nominal damages and it can be seen that on another trial he may show substantial damages, and it would be an injustice to allow the judgment to stand, he will be given another trial." In addition see *Harman* v. *The Washington Fuel Co.,* 228 Ill. 298.

Here the plaintiff because of a misconception of the force of his evidence or for some other reason did not properly present his case to the jury, therefore he does not prevail in this court so as to entitle him to recover costs.

We reverse the judgment complained of, set aside the verdict of the jury and remand the cause for a new trial.

*Reversed and remanded.*