Judge Buckner,
delivered the opinion of the court.
This was an action of covenant prosecuted by Singleton against Carroll and Sayer, on a writing executed by them to him, bearing date 4th January 1828; by which they bound themselves to pay to him for the hire of a negro man, from that time Until Christmas, one hundred dollars, to furnish for said slave the usual summer clothing, and to deliver him with as good clothing as he then wore, to the order of Singleton, in Lexington, at the expiration of the time for which he had hired him.
The breaches assigned in the declaration are, the failure of the defendants to pay the $100, and to deliver the negro at the time stipulated.
Two pleas were filed: 1st. Covenants performed. 2d. That they paid the $100; and that previous to the day on which they were bound to deliver the slave, he had run away from them, without any negligence or fault on their part; and that upon diligent search and inquiry they had not been able to’regain him; and that therefore, they could not deliver on the day named in the covenant sued on, &c.
Sn the construction of covenants,the intention of the contracting parties, which is to be ascertained from the whole context of the instrument, is the governing criterion.
Where the law creates a duty or charge, and the party is disabled from performing it, without any default on his part, and ha3 no remedy over, the law exouses him. But when by his own contract a person imposes a duty upon himself, general rule is, that he is bound to perform it, notwithstanding aninevita-ble accident.
*528 To the last plea there was a demurrer, which was o^rruled. Upon the trial of the cause, a verdict was returned for Singleton for $111, 16 cents, on which judgment was entered, after a motion for a new trial, submitted by him, was overruled. To reverse it he prosecutes (his appeal.
The only point presented by the assignment of errors worthy of consideration, is the sufficiency of the second plea. For the appellees, it has been contended, that a covenant should never be so strained in its construction, as to make it bear a meaning, which was probably, not in the contemplation of the contracting parties;'and that the one under consideration is not fairly susceptible of such an interpretation, as to render them responsible for the loss of the slave, which had occurred without their fault, and in such a manner as rendered it impracticable for them to have prevented it.
The appellant insists, that in whatsoever light a defence of such a character should be viewed, when relied on against the non-performance of a duty created by law, that it presents no sufficient plea to a covenant like this, in which there is an express undertaking to deliver the slave.
The decision of the question must depend upon the meaining of the parties, for in the construction of covenants,it is certainly proper to look to the intention of the contracting parties, as the governing criterion; so far as it can be ascertained from the whole context of the instrument, ex antecedentibus, et consequentibus. In endeavoring to do this, established principles of decision must not be disregarded. Where the law creates-a duty or charge, and the party is disabled from performing it, without any default on his part, and has no remedy over, the law will excuse him; as in the cases of waste against tenants in dower, by the courtesy, for life and years &c. but where by his •own contract, he imposes upon himself a duty, the general rule is, that he is bound to make it good, notwithstanding an inevitable accident. Thus where a lease, by indenture, was made of a meadow, bounded on one side by a river, and the lessee undertook to sustain and repair the banks, to prevent the water from overflowing them, upon pain of forfeiting a sum *529 of money; by a sudden flood the banks were destroyed, it was adjudged, that although he was excused from the penalty, because the injury was occasioned by the act of God and therefore inevitable, he was bound to repair, in convenient time, because of his covenant; Selwyn’s Nisi prius, II. vol. 393. So if a lessee covenant to repair generally, he is liable to an action of covenant,if the house be burnt down by fire; Com. Rep. 627, Earl of Chesterfield vs. Duke of Bolton, cited in II. Sander’s Rep. 233-6. The risk of the destruction of the banks by floods and of the house by fire are supposed to have been considered by the parties, and the covenantor having expressly undertaken to sustain and repair, cannot be excused by a casuality against'which he is considered as having covenanted; and in cases where a party makes an express covenant special^ in its terms, undertaking to be responsible for all injury sustained by the occurrence of a probable or possible disaster, he would clearly be responsible, although it should turn out to be obviously inevitable; but where the covenant is general, and by the act of God, a compliance with it has been rendered impossible, the covenantor has, in some instances been excused; thus it has been decided, that if a lessee covenanteth to leave a wood in as good plight as it was at the time of the lease, and the trees are afterwards overturned by a tempest, he is discharged of his covenant, quia impotentia excusat legem. I. Co. 98, 6. Whether the latter case may be considered as conflicting, in principle, with the other two, it is not very important, at this time, to determine. There is this difference however in them, that in the case of the banks, the covenantee might repair; whereas, it would be impossible for him to restore the trees in the same condition they were.
If lessee covenant to repair generally, he is liable to an action of covenant if the house be burnt down by fire.
When a person covenants, specially., to be responsible for all injury that may be sustained by the occurrence of a probable or possible disaster, he will be responsible although it should turn out to be obviously inevitable.
But when a covenant is general, and by the act of God a compliance with it is rendered impossible, covenantor will, in some cases, be excused.
Although lessor covenants that lessee shall quietly enjoy against all men, yet if he is ousted by an enemy, or tortiously entered on by strangers, no aotiou can be maintained against lessor.
*529 The true ground however, generally, upon which, in such cases, to rest the defence of the covenantor, is, that the loss is not to be considered as provided against by a general covenant. If a lessor covenants that the lessee shall quietly enjoy against all men, yet, in case he is ousted by an enemy, or tortiously entered upon by strangers, no action of covenant can be maintained against him, notwithstanding the express general covenant; Selwyn Nisi prius, II. vol. *530 412; Vaughan’s Reports 119 &c. In page 122 of the last cited author it is said, “that a man’s covenant shall not be so strained as to be unreasonable, or that it was improbable, to be so intended, without necessary words to make it such; for it is unreasonable to suppose a man should covenant against the tortious acts of strangers, impossible for him to prevent, or probably to attempt preventing. But it is there admitted, in page 119, that if the lessor covenants, thatthe lessee shall hold and enjoy his term, without the entry or interruption of any, whether such entry or interruption be lawful or tortious, he should be charged, because no-other meaning can be given to his covenant. In Dallas’ Rep. I. vol. 210, the case of Pollard and Sbaaffeer is reported. It was a contest growing out of alease, by indenture, dated 1st of March, 1773, of a sugar house &c. for five years, at a rent of £70 per aunum. The lessee covenanted for himself, ex-acutors, administrators, and assigns, to keep the demised premises in good repair, and to deliver them to the lessor at the end of the term, in such repair, &c. The breaches assigned were, the non-payment of a part of the rent, and that the premises were not delivered in good repair; but that the roof, &c. of the sugar house were destroyed. The lessee pleaded, covenants performed, and that an alien enemy, to-wit, the British army under the command of Sir. W. Howe, on 1st of September, 1777, had invaded the city of Philadelphia, had taken possession of the premises, and held the same until the end of the term, and afterwards; and that whilst they held the possession they had committed the waste, &c. In discussing a demurrer to the last plea, the chief justice expressed great doubt as to what would be the decision of such a question, by a court of common law, in England, at that day. The case was, however, decided against the lessee, as to the rent. 1st. Because of his express covenant to pay it. 2d. Because it was a sum certain, and the extent of the loss known, and for other reasons there assigned. But the chief justice said, that he was of opinion that the defendant was excused from his covenant to deliver up the premises, in good repair, on the 1st of March, 1778:
1st. Because a covenant to do this, against an act of God, or an enemy, ought to be so special and ex *531 press, and so clear, that no other meaning could be put upon it. r r
tha^ ¡¡l&ve ran away and thereby unable to return him, is good plea in ]’.ar of ,an ao" nant) ¡¡nstitu-ted by owner recoveras vaiUeon ac_13 count of a failure by term, agreeable to bis covenani-
2d. Because the defendant had no consideration, no premium for his risk, and it was not in the contemplation of either party; and lastly, because equality is equity, and the loss should.be divided.
The last reason is, to be sure, inapplicable to a court of common law in this state, although properly urged in Pennsylvania, where there was no court of chancery; but the others are applicable in a court of common law, and although we do not regard them as authority, yet, as the opinion of an able judge, they are entitled to much weight.
The case under consideration is one in which the appellees were not prevented from delivering the slave by the act of God, or the incursions of an alien enemy, but by the act of the slave himself; but still, if their plea be true, by an event over which it was as impossible for them to have any control, as it would be for a single individual to control the movements of an hostile army, unless they had caused the slave to be watched day and night, or had exercised a rigor and cruelly by keeping him constantly in chains; and it would be absurd to suppose, that the appellant expected, or that the appellees ever intended to bind themselves to observe such extraordinary diligence, or to practice such detestable cruelty. We are fore of opinion, that there is nothing in the wording of the covenant to justify the conclusion, that the parties, at the time of its execution, understood it as binding the appellees to deliver the slave at the time named, in all events. In the case of Young vs. Bruces, V. Littell, 324, this court decided, that a person who hires a slave, and covenants to return him at the end of the year, is discharged therefrom if the slave, without any fault of the hirer, dies in the mean time; upon the ground that it was not within the contemplation of the contracting parties, and that the covenant ought not to be so construed as to fender the hirer liable in such a case, the writing taining no express stipulation to that effect; and, cause there was not such an inadequacy between what might be supposed to be the value of a year’s service of the slave, and the price agreed to be paid by the *532 Bruces, which was $ 120, as to afford any rational inducement for them, in addition to the hire which they agreed to pay, to ensure the life of the slave.— The reasoning applies with full force to the present case.
Chinn, for appellant', Wickliffe and Woolley, for ap-pellees.
The judgment of the circuit court, must be affirmed with costs.