## Runyon, et al. v. Culver, et al.

(Decided January 21, 1916.)

### Appeal from Union Circuit Court.

1. Contracts—Impossibility of Performance—When Not an Excuse for Non-performance.—A contract is not invalid, nor is the promisor discharged, merely because it turns out to be difficult, unreasonable, dangerous or burdensome, or even impossible of performance. Where the performance becomes impossible subsequent to the making of the contract, the general rule is that the

promisor is not, therefore, discharged. Where the law creates a duty or charge, and the party is disabled to perform it, without any fault in him, there the law will excuse him; but where the party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding an accident by inevitable casualty, because he might have provided against it by his contract.

2.   Contracts—Consideration—Performance—Absence of Fraud or Mistake.—If one for a valid consideration promises another to do that which is, in fact, impossible, but the promise is not obtained by actual or constructive fraud, and is not on its face obviously impossible, there seems no reason why the promisor should not be held to pay damages for the breach of the contract; not, in fact, for not doing what cannot be done, but for undertaking and promising to do it. So, if it becomes impossible by contingencies which should have been foreseen and provided against in the contract, and still more if they might have been prevented, the promisor should be held answerable. So, if the impossibility applies to the promisor personally, there being no natural impossibility in the thing, this will not be a sufficient excuse.

3.   Damages—When Not Excessive.—Evidence examined and held sufficient to show that $1,500.00, the amount awarded appellees by the verdict of the jury in this case, for failure of appellants to perform the contract sued on, is not excessive.

L. C. FLOURNOY and MORTON & MORTON for appellants.

DRURY & DRURY and P. B. MILLER for appellees.

Opinion of the Court by Judge Settle—Affirming.

The appellant, I. V. Runyan, a resident of Union county, who had for several years been engaged in the manufacture of lumber and shingles, becoming financially embarrassed, on April 9, 1910, made to W. T. Harris a deed of assignment conveying all his property for the benefit of his creditors. Among the property conveyed by the deed was a saw mill or mills, shingle mill, engines and other machinery and appliances for the manufacture of lumber and shingles, located near the village of Island, in McLean county; also a lot of cypress logs near these mills, estimated to contain from 200,000 to 300,000 feet. January 21, 1911, the appellees T. E. Culver and T. E. Markham, partners composing the firm of Culver & Markham, became the purchasers of the mills, machinery and logs in question at the request of the appellant, I. V. Runyan and his wife, Nora D. Runyan. Culver & Markham were to pay for the mills, machinery and logs $1,500.00, for which they executed to W. T. Harris, as-

signee, their two promissory notes, of $750.00 each, payable, with interest, in six and twelve months, respectively. On the day of their purchase of the mills, machinery and logs Culver & Markham and Mrs. Nora D. Runyan and her husband, I. V. Runyan, entered into the following written contract:

"This contract made and entered into on this the 21st day of January, 1911, by and between T. E. Culver and T. E. Markham, parties of the first part, and Mrs. Nora D. Runyan, party of the second part, witnesseth:

"That, whereas the said Culver & Markham have this day purchased of W. T. Harris, assignee of I. V. Runyan, certain machinery near Island, Ky., consisting as follows:

"Between two and three hundred thousand feet of cypress logs on the log yard near Island, Ky., 1 24 horse-power Heilman engine, 1 30 horse-power Heilman engine, 2 shingle mills complete, 2 lathe mills complete, 1 circular saw at Henshaw, Ky., 1 pony saw mill, 1 line shaft, pulleys, belting and all other property belonging to the estate of I. V. Runyan, located near this point, excepting 1 Perkins shingle mill, which does not pass and is not sold.

"For the purchase price of $1,500.00, and whereas the said Mrs. Nora D. Runyan desires to become part owner of same, this agreement has been made between the parties aforesaid and is as follows: It is agreed that I. V. Runyan will devote his time to the manufacture of logs now on the log yard near Island, Kentucky, into shingles and such other lumber as the parties may deem best, and will give his time free of charge and see that all logs are properly manufactured into good merchantable shingles, lumber, etc., without expense of any kind to said Culver & Markham, except the cost of manufacturing same and of selling and delivering same to market, and so to do until sufficient lumber, shingles, etc., at a fair market price shall have been manufactured to pay for the cost of the mills, logs, etc., purchased this day of W. T. Harris, assignee of I. V. Runyan, as above mentioned, which will be $1,500.00 and the accrued interest. Then and in that event Mrs. Nora D. Runyan is to have and to own one-half of all the machinery above mentioned and one-half of whatever shingles, lumber, logs, timber, etc., that may remain after the payment of the notes and interest as above mentioned.

"It is understood and agreed that Culver & Markham are not to be bound in any way other than for the purchase price of the said notes and not to put up any other money at any time, during the life of this contract, for the purchase of timber or for operating expense or any other expense of any kind. It being agreed that the said Mrs. Nora D. Runyan shall put up the money for all this and to be alone bound therefor and in consideration of her so doing, she is to have one-half of all the machinery, etc., above mentioned after the notes shall have been paid. In case there shall not be sufficient logs on the yard now to pay for the said notes above mentioned then the said Mrs. Nora D. Runyan is to purchase sufficient timber to carry out this contract, and to pay off the amount of the notes aforesaid, said timber to be manufactured as hereinbefore mentioned.

"Settlements are to be made under this contract at the end of each 30 days and the amounts realized from the sale of shingles, lumber, etc., shall be accounted for and shall be applied on the notes executed to W. T. Harris, assignee of I. V. Runyan, for the purchase price of the machinery aforesaid.

"It is understood that on any shingles, lumber, etc., sold on the yard, no commission or other selling expense shall be charged or paid, but on all other sales made the parties making the sale shall be allowed ten cents per 100 on the lumber and ten cents per 1,000 on all shingles and lathes sold. This shall be all the selling expense, and no additional railroad, hotel, telephone or other selling expense shall be charged by the party so selling.

"Said I. V. Runyan joins in this contract, agreeing to the terms thereof, and in order to assist the said Mrs. Nora D. Runyan in carrying out the contract aforesaid, agrees to the terms requiring his time and attention in the fulfilling of this contract, and agrees to be fully bound therefor in any other way.

"Witness the hands of the parties on this the day and date first mentioned above.

"T. E. CULVER,
"T. E. MARKHAM,
"MRS. NORA D. RUNYAN,
"I. V. RUNYAN.

"It is understood and agreed under this contract that said I. V. Runyan and Mrs. Nora D. Runyan are to

begin work as per the terms of this contract not later than March 1, 1911, and to continue this work with all due diligence and dispatch and make due efforts to get out enough shingles, etc., to meet each of these notes when it becomes due.

"Nora D. Runyan,
"I. V. Runyan."

This action was instituted in the Union Circuit Court by the appellees, Culver & Markham, February 14, 1913, against the appellants, Nora D. Runyan and I. V. Runyan, seeking to recover $5,000.00 damages for a breach by the latter of the above contract, it being alleged in the petition that they had wholly failed to perform the same or any part thereof. The answer of appellants admitted the non-performance but resisted the recovery of damages sought upon the grounds: First, that the performance of the contract was prevented by the act of God; that is, that the incessant and constant rains prevailing in 1911 flooded the ground upon which the logs were lying to such an extent as to create a lake, the waters of which covered them and prevented their removal during that year to the mills at Island, where they were to be sawed into lumber and shingles; second, that the contract was further rendered impossible of performance because when and after the waters subsided and the logs could be and were hauled to the mills, they were so sap-rotten and worm-eaten as to render them wholly unfit for manufacturing into lumber or shingles; and that other logs, suitable for manufacture into lumber and shingles, had reached such a market price and the finished product fallen to such a low market price, as to render it impossible for appellants, by operating the mills, to pay the two notes executed by appellees to W. T. Harris, assignee.

In view of the absence from the contract of a provision excusing its non-performance by appellants on account of the existence of such weather conditions as are alleged to have prevailed in 1911, they cannot rely upon the defense first interposed by the answer. In Helburn & Co. v. Mofford, etc., 7 Bush, 169, the recovery of rent claimed by a landlord upon a store room was resisted by the tenants upon the ground that they were not bound therefor because of the destruction of the building by fire. In holding this defense untenable the court said:

"As early as 1809 this court, after full consideration, and a review of the authorities both English and American, in the case of Redding v. Hall, etc., 1 Bibb, 536, announced the rule, both at law and in equity, to be established by the weight of authorities that the tenant is bound to pay the rent, though the premises demised should be destroyed by inevitable casualty. The learned judge delivering the opinion in that case remarked: 'This rule, though at first view appears harsh and rigorous, upon a closer examination will be found to be reasonable, and to comport with principles to which we submit in analogous cases without questioning their propriety. The reason for the rule seems to be that as the tenant has expressly covenanted to pay the rent, and has not by his contract provided against his liability, notwithstanding any accident by inevitable necessity, the law can not interpose.'

"It is true that the law on the subject has been ruled differently in New York, Massachusetts and some other States. But in this State the rule has been settled for over sixty years, and not only acquiesced in, but repeated in numerous decisions by this court since the case of Redding v. Hall, *supra;* and he would be a bold judge who would now undertake to change the rule adhered to for so many years. It is so easy in making contracts of this character for parties to provide for inevitable casualty and unavoidable accidents, that in those in which no provision is made against such casualties and misfortunes it would almost seem that the parties intended to take the risk. But without further elaboration it is sufficient to say that we do not feel authorized to depart from a principle so well established by authority and so long recognized."

In Home Ins. Co. v. Wood, 139 Ky., 657, the insurance company was sued for loss sustained on a policy of fire insurance. It was pleaded in defense that the insurance company was not liable for the loss on account of the failure of the insured to pay the premium when due, as agreed. The reply of the insured pleaded a waiver by the agent of the insurance company of the prompt payment of the premium, a waiver of the forfeiture of the policy, and that his failure to pay the premium was caused by his illness and inability to attend to any of his business matters prior to the occurrence

of the fire. With respect to the last ground of defense it is in the opinion said:

"It is a well settled rule of law that where the law itself creates a duty, the non-performance of it will be excused by an unavoidable accident previous to its performance. But this principle has no application to a case where a person has created a charge or obligation upon himself by an express contract. In the latter case he will not be permitted to excuse himself therefrom by pleading an act of God, rendering performance impossible. See A. and E. Ency. of Law, 2d Ed., V. 1, page 588, and authorities there cited. This doctrine has also been repeatedly announced by this court. See Beaty and Skinner v. Scrivner, 19 Ky., 139; Bohannon v. Lewis, 19 Ky., 380; Singleton v. Carroll, 29 Ky., 527; Helburn v. Mofford, 70 Ky., 174. We are therefore of the opinion that the court erred in failing to direct the jury to return a verdict for the defendant upon their motion at the close of the plaintiff's testimony."

The second defense contained in the answer is likewise without merit. It will be observed from a reading of the answer that it fails to allege either that appellants or appellee at the time the contract was made, knew or had reason to believe it impossible of performance; nor was it alleged that the contract or any undertaking assumed by the appellants therein was obtained by fraud, actual or constructive, on the part of appellees; nor is the contract on its face obviously impossible. It therefore follows that the condition or contingencies subsequently arising, which are relied on by appellees as an excuse for failing to perform the contract, although they may have been of such a character as to render its performance impossible by them, cannot prevent a recovery of any damages that may have been sustained by appellees for its breach. In 9 Cyc., 625, it is said:

"A contract is not invalid, nor is the promisor discharged, merely because it turns out to be difficult, unreasonable, dangerous, or burdensome."

Again, in the same volume, pages 627-628, it is said:

"Where the impossibility is known to both of the parties at the time of making the agreement, there can be no intention of performing it on the one side, and no expectation of its being performed on the other, and therefore one of the essentials of a valid promise, viz., a legal consideration, is wanting.

"Where parties make an agreement, and they are ignorant at the time that performance of the contract is impossible, there is no contract, if it appears, upon the construction of the agreement, that it was intended to be conditional upon the supposed possibility of performance. There is a mistake here which renders the agreement void. But if there was an absolute unconditional contract not showing any intention that the possibility of performance was an implied condition, here the parties are bound, notwithstanding that at the time the performance was impossible."

"Where the performance becomes impossible subsequent to the making of the contract, the general rule is that the promisor is not therefore discharged. As said in an old case, 'Where the law creates a duty or charge, and the party is disabled to perform it without any default in him, there the law will excuse him;  *   * ,  * but where the party by his own contract creates a duty or charge upon himself, he is bound to make it good, notwithstanding an accident by inevitable necessity, because he might have provided against it by his contract.' "

In Gravel Switch, etc., Tel. Co. v. Lebanon, etc., Tel. Co., 139 Ky., 157, there was involved a contract, the enforcement of which was in part resisted upon the ground that a subsequent change of conditions made its performance impossible. In passing on this contention we said:

"In 2 Parsons on Contracts, side page 673, the rule is thus stated: 'If one for a valid consideration promises another to do that which is in fact impossible, but the promise is not obtained by actual or constructive fraud, and is not on its face obviously impossible, there seems no reason why the promisor should not be held to pay damages for the breach of the contract; not, in fact, for not doing what cannot be done, but for undertaking and promising to do it. So, if it becomes impossible by contingencies which should have been foreseen and provided against in the contract, and still more if they might have been prevented, the promisor should be held answerable. So, if the impossibility applies to the promisor personally, there being no natural impossibility in the thing, this will not be a sufficient excuse.' "

"In Beebe v. Johnson, 19 Wend. (N. Y.), 500, 32 Am. Dec., 518, the defendant agreed to secure to the defendant (plaintiff) in Canada the exclusive right to an in-

vention, a thing he could not do under the laws of the province. He was held liable. The court, after showing the contract was not illegal or absolutely impossible of performance, said: 'There is then nothing in the case to take it out of the rule in Paradine v. Jane, Al. 27, as expounded by Chambers, J., in Beale v. Thompson, 3 Bos. & Pul., 420, namely, if a party enter into an absolute contract without any qualification or exception, and receives from the party with whom he contracts the consideration of such engagement, he must abide by the contract, and either do the act or pay damages; his liability arising from his own direct positive undertaking.' In a note to that case many other authorities are collected. There was nothing here illegal in the contract when made. The subsequent withdrawal of the license by the city was a thing the defendant should have protected itself against when it made the contract. It knew its rights. It made the contract. It took the risk. * * *"

It follows from what has been said that the matters of defense set up by appellants' answer did not excuse their non-performance of the contract, and the only question left to be determined is, whether there is any merit in their further contention that the damages awarded appellees by the verdict of the jury for its breach were excessive.

It is here to be remarked that appellants' failure to operate the mills and thereby realize from the manufacture of the cypress logs into lumber and shingles the money, as required by the contract, with which to liquidate at maturity the two notes of $750.00 each executed by appellees for the mills and logs, led to the bringing of an action against the latter by Harris, assignee, to enforce their payment; and as the notes were secured by a lien on the saw mills and other machinery for which they were given, the action was brought in equity. After the institution of the present action it was, by consent of the parties, transferred from the ordinary to the equity docket and consolidated with that of Harris, assignee, against Culver and Markham, following which the matters in controversy between appellants and appellees were tried by a jury as issues out of chancery. The trial resulted in a verdict awarding appellees $1,500.00 damages. Appellants complain of that verdict and the judgment entered thereon, hence this appeal.

It is not denied that appellees were induced to buy the mills, machinery and cypress logs for the accommodation of appellants and to enable Mrs. Nora D. Runyan, the wife of I. V. Runyan, to become a partner in the mills and what might be left of the logs after paying the purchase price for the property, evidenced by the two notes executed by appellees to I. V. Runyan's assignee, vendor of the property. It will be observed that the contract entered into by the parties provided that the operation of the mills and manufacture of the cypress logs into lumber and shingles was to be done by Mrs. Runyan, with the assistance of her husband, without assistance from or expense of any kind to appellees, except the cost of manufacturing the logs into lumber and shingles, and delivering and selling same on the market, such cost to be paid out of the proceeds of the manufactured material, and the remaining proceeds applied to the payment of the two notes executed by appellees to Harris, assignee, and the accrued interest. Upon payment of these notes in the manner indicated, Mrs. Runyan was to have and own one-half of the mills, machinery and of whatever logs, lumber or shingles might remain. By a further provision of the contract appellees were not to be bound for anything save the purchase price of the property, represented by the two notes held by Harris, and Mrs. Runyan was to furnish whatever money might be required to purchase other logs should the proceeds realized for those included in the sale to appellees be insufficient to pay their notes to Harris. By yet another provision of the contract appellants obligated themselves to make settlements every thirty days, in which they were to account for and apply on the notes held by Harris the moneys they received, until the same were fully discharged. Finally, it is provided in the contract that appellants were to begin work thereunder not later than March 1, 1911, and continue it with all due diligence and dispatch until they manufactured enough lumber and shingles to pay the two notes when due, respectively.

Notwithstanding the undertaking last mentioned, appellants did not begin the work of operating the mills or manufacturing the cypress logs into lumber and shingles March 1, 1911, but delayed beginning it until the summer of 1912, more than a year thereafter. This delay appellants attempt to justify by claiming that the

rainfalls during the year 1911 produced such an over-flow of the land where the logs were situated that they could not be gotten to the mill yards or manufactured into lumber and shingles, and much of their evidence was directed to showing the existence of these conditions and also to showing that they were put to considerable expense and delay by the repairs they were compelled to make upon the mills and machinery.

According to the evidence introduced in appellees' behalf, whatever repairs were needed on the mills and machinery could have been made between the date of the contract and the time appellants were to begin work thereunder; and that while there were unusual rainfalls in the winter and early spring and again in the fall of 1911, the summer of that year was an unusually dry one, and between the last of May and the middle or last of September, the weather would not have interfered with appellants' getting the logs to the mill yards, and with proper diligence all of them might have been removed to the yards in that time. Several letters written by the appellant, I. V. Runyan, to appellees appear in the record, and in none of them did he make the claim that the rains interfered with his getting the logs to the mill yards and manufacturing them into lumber and shingles during the summer and fall of 1911.

On December 7, 1911, appellees wrote appellants as follows:

"Morganfield, Ky., 12/7/1911.

"Mrs. Nora D. Runyan and I. V. Runyan,
    "Henshaw, Ky.

"We wrote you on November 14, 1911, asking you to make good your contract with us dated January 21, 1911, in regard to machinery, lumber, etc., bought of W. T. Harris, assignee of I. V. Runyan, near Island, Ky., and have received no reply. We must insist that you attend to this matter at once, as Mr. Harris is urging the payment of notes now due which you agreed to take care of.

"Unless we hear from you by return mail we will be forced to proceed against you."

In a letter to P. B. Miller, attorney for appellees, written by the appellant, I. V. Runyan, February 1, 1912, he said:

"Dear Sir:

"I have been up to Island to make arrangements for manufacturing the shingles under the Culver & Markham contract about which we were talking last week. I think I have made arrangements by which we can manufacture the timber which we have on the ground at an early date.

"I will make final arrangements in regard to this matter this week and let you hear from me."

On February 3, 1912, the appellant, I. V. Runyan, again wrote Miller, advising him that he had made the arrangement to manufacture the logs, as indicated in his letter of February 1st to him. According to the evidence nothing was done under the new arrangement referred to in the last two letters by Runyan down to June 25, 1912, on which date he again wrote appellees as follows:

"Dear Sirs:

"The boiler at Island has given down and needs a new set of flues, and the fire box patched, and will cost about $75.00 to $100.00 to repair it, and I can not do anything until it is repaired. The other boiler that you have there is in worse shape than the one that has been used. Please attend to repairing the boiler at once or authorize me to have it repaired, so we can start to work again, as I can not do anything until it is repaired."

This letter was answered by appellees June 29th, as follows:

"Dear Sir:

"We are in receipt of your favor of the 25th inst., in which you say that the boiler of the shingle mill at Island has given down and needs a new set of flues and the fire box patched, and will cost about $75.00 to $100.00 to make such repairs.

"We desire to say to you that we have nothing to do whatever with furnishing or making repairs to this mill, that being the duty of yourself and Mrs. Nora D. Runyan, and we now decline to make such repairs at all and notify you for yourself and Mrs. Runyan that you must go ahead and comply with your contract."

A copy of this letter was mailed to Mrs. Nora D. Runyan. It will be recalled that the contract between appellants and appellees relieved the latter of any cost of making such repairs as were referred to in the fore-

going correspondence, and made it the duty of appellants to pay for same.

It further appears from the evidence that after allowing more than a year to elapse before beginning the work of manufacturing the logs into lumber and shingles, appellants, without obtaining appellees' consent, entered into a contract with J. P. Daniels, whereby the latter undertook to saw at his mills the cypress logs into lumber and shingles, and under this contract Daniels was given the right to use, free of cost, during the life of the contract, any of appellees' machinery then in possession of appellants. But little was accomplished under the last named contract, for by that time, according to the evidence, the logs to be manufactured thereunder by Daniels, having remained upon the ground for more than a year, had become so sap-rotten and worm-eaten as to be of little value. Indeed, Daniels testified that the greater part of the lumber and shingles made by him out of these logs was unsaleable, and much of what he sold the purchasers refused to take. Daniels is corroborated by other witnesses as to the sap-rotten and worm-eaten condition of the logs, and but little evidence was offered by appellees in contradiction thereof.

The appellant, I. V. Runyan, testified that he paid out $800.00 in efforts to get the logs sawed into lumber and shingles and only realized from sales thereof $374.00, thereby causing a net loss to himself and wife, or to the latter, of more than $400.00. It may be conceded, for the purposes of this case, that the logs and material produced therefrom were as worthless as claimed by appellant and testified by Daniels and others, and that appellants sustained the loss testified by I. V. Runyan, yet if, as the evidence of appellees conduced to prove, such condition of the logs and the lumber and shingles manufactured therefrom was caused by the delay in getting the logs manufactured into lumber and shingles, not only should appellants sustain the loss alleged to have resulted to themselves, but also be made to compensate appellees for the damages thereby caused them. It is not to be overlooked that during the more than a year's delay on the part of appellants in beginning work under their contract with appellees, the latters' mills and machinery were idle and exposed to the weather, which greatly injured them and caused such deterioration in their value as to make the whole well nigh worthless.

Not only were appellees damaged to the extent of the deterioration in the value of their mills and machinery, but the failure of appellants to comply with the contract prevented the payment of the notes they had executed to Harris, out of the proceeds that might, but for appellants' delay, have been realized from the sales of lumber and shingles manufactured from the logs, causing appellees to look elsewhere for the money to liquidate them; and in addition to the damages mentioned, appellees lost this part of the profits that, but for appellants' delay, would reasonably have been realized from the sales of lumber and shingles after the payment of the notes.

During their long possession of the mills, machinery and logs, and such use as they made of the mills, appellants paid nothing on the notes held by Harris against appellees, although such payments were required by the contract to be made every thirty days.

Appellants do not complain that the issues of fact decided by the jury were not properly submitted to them by the trial court, and while there was a contrariety of evidence as to each issue of fact, we think as a whole it was sufficient to show not only that appellants failed to comply with their contract in the particulars claimed by appellees, but also that such failure was without reasonable excuse; and it being the province of the jury to estimate and fix the damages sustained by appellees, we are unable to say that the amount awarded them was unauthorized by the evidence or is excessive in amount. Wherefore, the judgment is affirmed.