TALLAHATCHIE LUMBER CO. *v.* CECIL LUMBER CO.

[87 South. 449, No. 21357.]

1. SALES. *On shipment of lumber delivery f. o. b. destination, seller held bound to procure cars.*

Where a contract for the sale of lumber provides that delivery shall be f. o. b. point of destination, and it is clear from the evidence that the parties construed the contract to require the shipper to furnish cars, the duty is on the seller to procure cars for shipment of the lumber.

2. SALES. *Seller held not relieved of duty to furnish cars for shipment of lumber by inability to secure them.*

Where a contract for the sale of lumber is unconditional, and the seller has engaged to deliver the lumber f. o. b. point of destination, and to provide cars for that purpose, and has failed to

provide against the consequences of a shortage of cars or other contingency, the seller is not discharged from the duty of performing the contract by reason of inability to secure cars for the shipment of the lumber.

3. SALES. *Purchaser's request to withhold shipment of lumber because of temporary embargo held not to justify immediate cancellation.*

Where, under a contract for the sale of lumber for export, there has been a delay of 30 days in the shipment of lumber, and the seller was then requested by wire to withhold shipments for a few days on account of a temporary embargo in the port of shipment, and the seller had certain cars already loaded at the time this request was received, *held*, that the receipt of this request to withhold shipments for a few days did not justify an immediate cancellation of the contract, and that it was the duty of the seller to notify the purchaser of existing conditions before diverting the shipments and canceling the order.

4. EVIDENCE. *In action for breach of contract of sale, buyer's manager could testify from recollection as to price at which goods resold, although resale contract was in writing.*

In an action for the breach of a contract for the sale of lumber, a contract of resale of the lumber is only collaterally involved, and where a large amount of lumber has been delivered and paid for under the contract of resale, it is competent for the sales manager who negotiated the contract of resale and handled the deliveries thereon to testify from his independent recollection the price at which the lumber had been sold, although the contract of resale was in writing.

APPEAL from circuit court of Pearl River county.
HON. A. E. WEATHERSBY, Judge.

Action by the Tallahatchie Lumber Company against the Cecil Lumber Company. Judgment for defendant on a directed verdict, and plaintiff appeals. Reversed and rendered.

*Tally & Mason* and *Whittington & Osborn*, for appellant.

The appellee agreed to ship the lumber f. o. b. New Orleans, Louisiana. The recent case of *J. M. Griffin* v. *Ed-*

*ward Eiler Lumber Company,* No. 20895, in which this court decided that where lumber was to be delivered f. o. b. cars at the point of shipment, the duty devolved upon the purchaser to procure cars is not in point. It is not in the case here. In the first place, the contract provided for the shipment of the lumber f. o. b. New Orleans, Louisiana, where provision is made for delivery f. o. b. the point of destination, the title does not pass until the subject-matter has reached such point (23 R. C. L., 1338). Where the delivery is to be made at a particular place, it is the duty of the seller to transport the subject-matter to such place.    (23 R. C. L. 1380.)

If the sale is f. o. b. point of destination, the title as a general rule is not deemed to pass until the property reaches its destination and is accepted by the buyer, the carrier being deemed the seller's agent to transport the property to the place of delivery (24 R. C. L. 45). If the parties interpreted the contract to mean that the appellee was to furnish the cars, the court will follow such construction.    (23 R. C. L., 1338.)   See the notes and the cases cited in *Ramsey & Gore Mfg. Co.* v. *Kelsea,* 22 L. R. A. 421.

If the vendor undertakes to deliver at a certain place, it is his duty to procure the cars.    *McNeal* v. *Braun,* 53 N. J. L. 617, 26 A. S. R. 441; see notes under *Hurst* v. *Altamont Mfg. Co.,* 6 L. R. A. (N. S.) 929, and see, also, notes under *Culp* v. *Sandoval,* L. R. A. 1917-A, page 1164. There can be no question but what the seller in this case undertook to secure the cars for he said he tried to get cars.    It was his interpretation of the contract.    There is no dispute on this point.

In view of the construction placed on the contract by the parties, together with the stipulation regarding delivery f. o. b. New Orleans, Louisiana, the buyer was not required to furnish cars.    *Harman* v. *Washington Fuel Co.,* 81 N. E. 1017.    The duty was upon the appellee to procure the cars, and inasmuch as it made an uncondi-

tional contract, it cannot plead its failure to procure cars to justify its non-performance of the contract.

Unconditional Contract-Risk Assumed by Appellee. The appellee was not discharged from the performance of its contract merely because it could not get cars. The contract was unconditional. The risk of getting cars was assumed by the appellee. It was bound to either deliver the lumber in accordance with its contract or to respond in damages.

A contract is not invalid, nor is the promisor discharged merely because it turns out to be difficult, unreasonable dangerous or burdensome. 9 Cyc., 625. It has been held that it is no excuse for a failure to deliver whiskey according to contract that there was war and the whiskey would have been likely to be seized. 9 Cyc., 626.

Where the performance becomes impossible subsequent to the making of the contract, the general rule is that the promissor is not therefore discharged. As is said in an old case, "Where the law creates a duty or charge, and the party is disabled to perform it without any default in him, there the law will excuse him—but where the party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract." 9 Cyc., 628.

The appellee cannot defend on the ground that it could not obtain cars for it could only plead this as a defense by a stipulation in its contract. The contract was for unconditional delivery. There were no exceptions of any kind to relieve the appellee from delivery. It was an unqualified contract for the delivery of the lumber. The failure to get cars did not discharge the appellant—see the valuable notes under *Runyan* v. *Culver*, 1916 L. R. A. 3, and see especially the notes at pages 10, 71, 72, and 73.

Temporary embargoes may temporarily prevent the performance of a contract, but they do not terminate the contract and would only suspend it. 1916F, L. R. A. 73. Parties who enter into contract must perform the obliga-

tions created thereby, though performance subsequently becomes unexpectedly burdensome, or even impossible. When the contract was made, the conditions were normal. The appellee merely maintains that afterwards it could not get cars. This is no defense. We call very special attention to the recent case of *Piaggio* v. *Somerville*, 80 So. 342; *Piaggio* v. *Somerville*, 80 So. 324, L. R. A., 1916 F. 10.

Appellant did not renounce contract. The appellee was not relieved from complying with its contract by the request of the appellant to withold shipment on account of the embargo from New Orleans to Havana. It was nothing more than a request. The testimony shows that the appellant knew nothing at all about any part of the lumber being loaded and that if it had known the lumber had been loaded it would have accepted the lumber notwithstanding the embargo.

The request was not renunciation of the contract and the appellant, if it had been sued by the appellee on the contract, could not have pleaded the mere request to withhold shipment for a few days as a discharge. A renunciation must be unequivocable and distinct. A mere expression of an intention, or the mere making of a request is not enough. 9 Cyc., 637.

*Parker & Shivers,* for appellee.

It will be remembered that the dealings between the parties to this litigation arose, transpired and were concluded during the early part of 1918, a time when the World War was at it's most serious stage, at a time when our government controlled shipments of every kind, at a time when our government, as it should have done, absolutely controlled the movements of all rolling stock of each and every railroad through the country; at a time when every lumber manufacturer throughout the country was being put to it's best towards manufacturing and selling and in fact manufacturing, selling or shipping that

which the Government either desired to use in construct-
ing cantonments for its soldiers, or to be used in connec-
tion with the war and all cars and rolling stock were being
used, to meet the various exigencies arising in the course
of the Government's war preparations, etc.

The only time that it is shown by the record, either from
the testimony of appellant or appellee that cars could be
had, in which to move this stock for appellant, was on or
about the 16th of March, when appellee received three car-
loads of feed and the Government had not ordered these
three cars loaded out and then it was that the appellee,
anxious to get the benefit of moving the stock of boards,
loaded same for appellant and appellant stopped the ship-
ment by its telegram above referred to.   Thus it will be
seen that appellant is responsible for and the cause of said
lumber movement being stopped, therefore, we say that
the failure to move said lumber in accordance with appel-
lant's order, was brought about by appellant and not by
appellee.

It will also be noticed that appellant's excuse for stop-
ping this shipment, as given by it, was that the steamship
company had placed an embargo on shipments to the points
where it desired to export this lumber.   They attempted
to say in its correspondence that this embargo was tem-
porary but so far as this record is concerned, the embargo
had not been lifted when this suit was tried, and the court
is not advised as to the duration of said embargo, a matter
that the appellant alone was advised, of as the appellee
was not even advised to what point said lumber was to be
exported.

Of course appellant, plaintiff in the lower court, was
required to make out its case and show the damages sued
for by clear convincing evidence.' The lower court was
correct in its holding as will appear applying the facts
shown by this record, to the law governing these cases.
It cannot be contended that appellant could show its con-
tract of resale, a written contract by testimony of a wit-
ness that he had observed this contract; by no rule of rea-

son or evidence could such a position be sustained and the strongest evidence on this point plaintiff had, as shown by the record, was that it had some kind of contract and its witnesses had seen the contract.

Going further, we submit that even though plaintiff introduced its written contract on this subject it would have had to have gone further and shown that appellee was advised at the time it booked the order of this contract, then recovery could have been had on this basis, to-wit, the basis of a special sale of this lumber. *Crystal Ice Company* v. *Holliday*, 106 Miss. 714.

The testimony shows that appellee was not even advised as to where this lumber would ultimately go, much less being advised as to a particular contract, for a particular price with appellant's particular client.

Kind of Degree of Proof Necessary to Show Damages by Way of Loss of Prospective Profits. *Crystal Ice Company* v. *Holliday, supra.* The rule governing recovery of profits lost by reason of breach of contract was long since announced in this state in the case of *Railroad Company* v. *Ragsdale*, 46 Miss. 483, wherein it was held that losses of profits in a business cannot be allowed unless the data of estimation are so definite and certain that they can be ascertained reasonably by calculation, and then the party in fault must have had notice either from the nature of the contract itself or by explanation of the circumstances at the time the contract was made, that such damages would ensue from non-performance."

We submit that the law set out in appellant's brief is perfectly good law if same was supported by the facts in this case, but that the facts as disclosed by the record shows utter failure on the part of the plaintiff to introduce testimony competent and satisfactory to show its damages in either of the ways the law required and that the lower court on the facts as shown, was correct in its ruling in instructing the jury to find for the defendant and that likewise on this record this case should be affirmed.

W. H. COOK, J., delivered the opinion of the court.

Appellant, Tallahatchie Lumber Company, sued to recover of appellee, Cecil Lumber Company, the sum of seven hundred dollars as loss of profits or damages sustained by reason of the breach of a certain contract in writing, by the terms of which appellee agreed to sell and deliver to appellant one hundred thousand feet of lumber. The correspondence evidencing the contract shows that the lumber was for immediate shipment, and was to be delivered f. o. b. New Orleans, Louisiana, for export, and appellant averred, and offered evidence to prove, that it had resold the lumber at a net profit of seven dollars per one thousand feet, and therefore that a profit of seven hundred dollars would have been made had the lumber been delivered. The lumber was never delivered, and this suit was begun to recover said sum.

Appellee, defendant, interposed the plea of the general issue, and gave notice thereunder of the following defensive matter:

"That said defendant had said property on hand to fill the order of the plaintiff, and had part of same loaded on cars when it received notice from plaintiff not to ship said lumber, that it was unable to hold said lumber and was compelled by reason of the act of the said plaintiff to dispose of the same, and that said lumber was taken over by the United States government."

Plaintiff filed the following reply to defendant's notice of defensive matter:

"The plaintiff says that, if defendant had a part of the lumber on hand and had the same loaded on cars to be shipped, it received no notice thereof, but that a long time after shipment was overdue the government of the United States for a few days placed an embargo on lumber and other things to be shipped from New Orleans; that as soon as plaintiff learned this it telegraphed defendant to withhold shipment for a few days on that account, not knowing at the time that any of said lumber was loaded;

that, without notifying plaintiff, defendant diverted said lumber; that, if defendant had notified plaintiff that the lumber was cut, loaded, and ready for shipment, it would have accepted the same, notwithstanding the embargo.

"Defendant's reply to plaintiff's request to withhold shipment for a few days caused this defendant to cancel said order, and, although plaintiff was then willing to carry out the contract, although defendant had breached it, and requested the defendant to perform, yet the said defendant failed and refused and canceled said contract, and never thereafter undertook to make any effort to carry it out."

Upon the trial of the case evidence was introduced by both parties, and at the conclusion of the evidence both the plaintiff and defendant requested peremptory instructions. The motion of defendant, appellee here, for a peremptory instruction, was granted, and from the judgment rendered in the pursuance thereof appellant appeals.

There are no disputed issues of fact in this record. It appears from the evidence that the order for this lumber was accepted on or about February 14, 1918, and that for thirty days thereafter the defendant company was unable to secure cars to make any shipments on this order; that on or about March 16th, it secured three cars which it loaded for shipment to appellant, and on that date it received a telegram from appellant to the effect following:

"Steamship Company has placed temporary embargo on lumber so please withhold shipments until embargo is lifted."

Appellee did not answer this telegram by wire, but immediately diverted the three cars to northern points to apply on government contracts, and two days later, to-wit, on March 18th, wrote appellant that three cars were loaded and ready to be billed out when its telegram was received; that the three cars had been diverted to other points; that, since there was some doubt as to when the embargo would be lifted, it had disposed of the stock; and that the order would be canceled. On March 20th appel-

lants wrote appellee, declining to accept a cancellation of the order and insisting upon full performance of the contract, and stating that, if appellee had advised it by wire that the three cars were loaded, it would have arranged for shipment through other ports, and further advising that, if the embargo was not lifted within a few days, it would arrange to move the lumber by another route to its foreign clients. On March 22d appellee wrote appellant, again declining to comply with the contract and returning the order to appellant, and stating that the stock had been sold to other parties on which equipment was immediately available.

While the evidence shows that this lumber was sold to the government, it does not appear that it was ever requisitioned by the government, and appellee wholly failed to sustain this defense. In fact, the president of defendant company testified that three cars of the lumber were loaded and ready for shipment on this contract when the telegram requesting that the shipment be held for a. few days was received, and that these cars would have gone forward on the contract if this telegram had not been received. He also repeatedly testified that the failure to secure cars was the only reason the entire contract was not filled within the first thirty days after the acceptance of the order.

The first question presented on this appeal is whether the failure of appellee to secure cars will justify the breach of the contract and cancellation of the order. It is clear from the evidence that the parties interpreted the contract to mean that appellee was to procure cars for the shipments, and the contract also provided for delivery of the lumber f. o. b. the point of destination, and in view of the construction placed on the contract by the parties, together with the stipulation regarding delivery f. o. b. point of destination, the duty was upon appellee to procure cars for these shipments. 23 R. C. L. 1338; *Hurst v. Altamont Manufacturing Co.*, 73 Kan. 422, 85 Pac. 551, 6 L. R. A. (N. S.) 928, and note, 117 Am. St. Rep. 525,

9 Ann. Cas. 549; *Culp* v. *Sandoval,* 22 N. M. 71, 159 Pac. 956, L. R. A. 1917A, 1157, and note page 1163; *Harman* v. *Washington Fuel Co.,* 228 Ill. 298, 81 N. E. 1017; *M'cNeal* v. *Braun,* 53 N. J. Law, 617, 23 Atl. 687, 26 Am. St. Rep. 441.

The contract in this case is unconditional, and the appellee has by its own act engaged to deliver the lumber at New Orleans, and to provide cars for that purpose, and, since it failed to provide against the consequences of a shortage of cars or other contingency, it was not discharged from performance of its contract by reason of its inability to secure cars. The rule applicable here was announced in this state in the early case of *Jemison* v. *McDaniel,* 25 Miss. 83, and is reannounced in the recent case of *Piaggio* v. *Somerville,* 119 Miss. 6, 80 So. 342, where Justice Smith, speaking for the court, says:

"The rule is that, when a party by his own contract creates a duty or charge upon himself, he is bound to discharge it, although so to do should subsequently become unexpectedly burdensome or even impossible; the answer to the objection of hardship in all such cases being that it might have been guarded against by a proper stipulation."

See Harmon on Contracts, 824; *Harmon* v. *Fleming,* 25 Miss. 135; *Abby* v. *Billups,* 35 Miss. 618, 72 Am. Dec. 143; *Mitchell* v. *Hancock County,* 91 Miss. 414, 45 So. 571, 15 L. R. A. (N. S.) 833, 124 Am. St. Rep. 706; 3 Elliott on Contracts, par. 1891; 13 C. J. 639; 6 R. C. L. 997; *Runyon* v. *Culver,* 168 Ky. 45, 181 S. W. 640, L. R. A. 1916F, 3, and note page 10.

The next question presented by this appeal is whether the telegram notifying appellee of the temporary embargo, and requesting a few days' delay in shipments, justified appellee in immediately canceling the order. We do not think so under the circumstances in evidence here. It appears from the evidence that there had been a delay of thirty days in these shipments without any fault upon the part of appellant, and since appellant was not advised

that any part of the lumber was then loaded, we think appellee owed the duty of notifying appellant of the existing conditions before diverting the shipments and canceling the order. The telegram in question was merely a request to hold up shipments for a few days, and upon receipt of this telegram appellee could have advised appellant by wire that part of the lumber was loaded, and asked for instructions, and, since it did not do so, the immediate cancellation of the order was not justified. There are numerous cases holding that an embargo temporarily preventing performance of a contract suspends, but does not terminate, a contract. See L. R. A. 1916F, 73, and cases there cited. However, it is unnecessary to decide whether this doctrine will be applied here in its full force, since we hold that under the facts in evidence here it was the duty of appellee to notify appellants of the existing conditions before attempting to cancel the order.

Finally, it is urged on behalf of appellee that the testimony of appellant's sales manager that the lumber in question had been resold at a profit of seven dollars per thousand was inadmissible for the reason that the contract of resale was in writing, and this written contract was not produced. It appears from the testimony that the witness was sales manager for appellant, and as such handled this contract of resale, and that about three hundred fifty thousand feet of lumber was delivered on the contract and was paid for at the price of forty-five dollars per thousand delivered in Havana, Cuba. The contract of resale was not the foundation of this action, and it was only collaterally involved in the present controversy. The price at which the lumber had been resold was only material as to the measure of damages for the breach of the contract of purchase, and we think it was competent for the sales manager who negotiated the sale of the lumber to testify from his independent recollection the price at which it was resold. 22 C. J., sections 1224, 1231, and 1300; *Norvell* v. *Gilreath*, 189 Ala. 452, 66 So. 635; *Carden* v. *McCon-*

*nell,* 116 N. C. 875, 21 S. E. 923; *Elrod* v. *Cochran,* 59 S. C. 467, 38 S. E. 122.

There is no conflict in the evidence, and it follows from these views that appellant as plaintiff in the action was entitled to the peremptory charge. The judgment appealed from will accordingly be reversed, and judgment entered here for appellant for the amount sued for and interest.

Reversed, and judgment here for appellant.

*Reversed.*